**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:15-CV-195-PRC |
| ) | |
| AMEX NOOTER, LLC, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Arcelormittal's Motion to Quash Amex Nooter's Third-Party Subpoenas [DE 24], filed by Plaintiff Arcelormittal Indiana Harbor LLC (ArcelorMittal) on September 18, 2015. Defendant Amex Nooter, LLC filed a response on October 2, 2015, and ArcelorMittal filed a reply on October 16, 2015.

On May 15, 2015, ArcelorMittal filed a Complaint against Amex Nooter, alleging that Amex Nooter employees were the responsible cause behind a fire and explosion that occurred within Blast Furnace No. 3 at ArcelorMittal's Indiana Harbor West Facility on April 3, 2013. The fire and explosion caused property damage to ArcelorMittal's premises, specifically to sections of Blast Furnaces Nos. 3 and 4 and the area surrounding these blast furnaces. As damages, ArcelorMittal seeks the costs incurred in repairing the property damage caused to its premises by the fire and the costs incurred in restarting the blast furnaces after they were rendered inoperable for several days due to the fire.

Prior to the filing of this litigation, ArcelorMittal provided Amex Nooter with invoices and purchase orders for the repair work performed by various companies, which it is now seeking in damages from Amex Nooter.

On September 8, 2015, Amex Nooter issued seventeen subpoenas requesting documentation from a number of businesses that performed work in repairing the damaged parts of ArcelorMittal's premises. Each of these subpoenas are identical and requests the following documentation:

1. Any and all documents and communications related to labor, material, equipment, goods and/or services provided to ArcelorMittal during the period January 1, 2013 through April 2, 2013 that are related, directly or indirectly, to the Blast Furnace No. 3 or Blast Furnace No. 4 located at the ArcelorMittal Indiana Harbor West Facility in East Chicago, Indiana.

2. Any and all documents and communications related to labor, material, equipment, goods and/or services provided to ArcelorMittal on April 3, 2013 at the ArcelorMittal Indiana Harbor West Facility in East Chicago, Indiana.

3. Any and all documents and communications related to labor, material, equipment, goods and/or services provided to ArcelorMittal during the period April 4, 2013 to October 31, 2013, that are related directly or indirectly to the design, maintenance, fabrication, construction, remediation or repair of any portion of Blast Furnace No. 3 or Blast Furnace No. 4 located at the ArcelorMittal Indiana Harbor West Facility in East Chicago, Indiana.

4. A completed and executed Affidavit attached to this subpoena.

*See, e.g.*, (Pl. Mot., Ex. A, 12-13).

ArcelorMittal sent correspondence to Amex Nooter, objecting that these requests are overbroad and would capture significant documentation that is not relevant to this case and not reasonably calculated to lead to the discovery of admissible evidence. Following attempts to resolve the dispute, ArcelorMittal filed the instant motion to quash.

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii), a party may serve a subpoena commanding a nonparty to produce designated documents. Rule 45(d)(3)(B) permits a court to quash a subpoena based on a timely motion if the subpoena requires the disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Under these circumstances, a court "may, instead of quashing or modifying a

subpoena, order appearance or production under specified conditions if the serving party . . . shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship . . . and ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C).

As for relevance, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." The broad scope of discovery permits a party to seek information "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

A party that is not the recipient of a Rule 45 subpoena does not have standing to quash the subpoena unless the party claims a personal right or privilege with respect to the documents sought in the subpoena. *See Powell v. Regency Hosp. of NW. Indiana, LLC*, NO,. 2:10-CV-220, 2011 WL 1157528, at *2 (N.D. Ind. Mar. 28, 2011) (citing *Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05-cv-451, 2007 WL 496382, at *2 (N.D. Ind. Feb. 12, 2007); *Teed v. JT Packard & Assocs., Inc.*, No. 10-MISC-23, 2010 WL 2925902, at *2 (E.D. Wis. July 20, 2010); *Barker v. Local 150, Int'l Union of Operating Eng'rs, AFL-CIO*, No. 08 C 50015, 2010 WL 934068, at *3 (N.D. Ill. Mar. 11, 2010)). In this instance, ArcelorMittal has standing to challenge the subpoenas only to the extent they allegedly infringe on ArcelorMittal's legitimate interests. ArcelorMittal does not have standing to argue that the subpoenas are an undue burden on the subpoenaed parties.

In the instant motion, ArcelorMittal first argues that the subpoenas are overbroad because ArcelorMittal has limited the nature of its damages in the Complaint to the repairs to its facility and costs to restart the furnaces following the April 3, 2013 fire. ArcelorMittal further argues that the

3

discovery is not relevant because it seeks documentation for work performed for the three months prior to the incident, regardless of whether that material is related to the April 3, 2013 fire. ArcelorMittal objects to the request for materials related to "all work" performed at the Indiana Harbor Facility on April 3, 2013, without regard to whether the work was related to the fire. Finally, ArcelorMittal argues that work at Blast Furnaces Nos. 3 and 4 for the six-month period after the incident is not relevant.

In response, Amex Nooter explains that it is seeking discovery not only on the issue of damages but also to develop a complete picture of what was taking place at Blast Furnaces Nos. 3 and 4 during the time period before and after the April 3, 2013 fire. Amex Nooter notes that it is the only defendant in this multi-million dollar lawsuit and it is defending itself against ArcelorMittal's allegations that Amex Nooter's acts or omissions *caused* the fire, that the fire caused the property damage, and that ArcelorMittal's valuation of the claimed property damage is accurate. Amex Nooter seeks discovery for the period before April 3, 2013, to determine whether the post-fire claim improperly includes labor, material, goods, or services for pre-fire work. Amex Nooter also seeks information for the time period after April 3, 2013, to determine whether ArcelorMittal's claim improperly includes items the parties provided after the fire as costs to repair, rebuild, or replace damage caused by the fire when those items were agreed to prior to the fire. In other words, Amex Nooter seeks to determine whether the pre-fire work is improperly claimed as repairs and whether post-fire work was agreed to be performed before the fire. Amex Nooter does not take at face value ArcelorMittal's representations regarding the documents it provided to Amex Nooter prior to commencing this litigation.

The Court finds that the requests in paragraph 1 and 3 regarding the period before and after April 3, 2013, are relevant and narrowly tailored for a ten-month period specific to the work performed in the two Blast Furnaces shortly before and after the April 3, 2013 fire and are reasonably calculated to lead to discoverable evidence bearing on the cause of the fire, the scope of the property damage caused by the fire, and the measurement of the alleged property damage.

However, as for paragraph 2, Amex Nooter has not sufficiently explained how discovery regarding the *entire* Indiana Harbor West Facility is relevant to the fire and explosion that occurred in Blast Furnace No. 3 and damaged Blast Furnaces Nos. 3 and 4. Therefore, the Court limits the scope of Paragraph 2, which shall now read:

> 2. Any and all documents and communications related to labor, material, equipment, goods, and/or services to ArcelorMittal on April 3, 2013, that are related, directly or indirectly, to Blast Furnace No. 3 or Blast Furnace No. 4 located at the ArcelorMittal Indiana Harbor West Facility in East Chicago, Indiana.

Second, ArcelorMittal contends, without explanation, that these requests seek documents that ArcelorMittal keeps "confidential, including pricing information and contractual documents between ArcelorMittal and its contractors." However, ArcelorMittal does not explain how documents that are not within its custody or control are "confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Thus, ArcelorMittal has not made the requisite showing that its right to privacy regarding these documents that are in the hands of third parties is higher than Amex Nooter's right to relevant discovery in this litigation. In addition, ArcelorMittal does not argue in its motion that Amex Nooter specifically should not have access to the information sought in the subpoenas; ArcelorMittal articulates a concern that the information not be made public. This concern can be resolved with an agreed protective order. ArcelorMittal's blanket assertion for the

first time in its reply brief that it does not want Amex Nooter to have this information is untimely and is not supported by any analysis.

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Arcelormittal's Motion to Quash Amex Nooter's Third-Party Subpoenas [DE 24], denying the motion as to the requests in Paragraphs 1 and 3 of the subpoenas and granting in part and denying in part the motion as to the request in Paragraph 2 of the subpoenas. As set forth more specifically in this Opinion, Paragraph 2 of the subpoenas is limited to Blast Furnace No. 3 and Blast Furnace No. 4. The parties are granted leave to file a Joint Motion for Stipulated Protective Order.

SO ORDERED this 28th day of October, 2015.

    s/ Paul R. Cherry
    MAGISTRATE JUDGE PAUL R. CHERRY
    UNITED STATES DISTRICT COURT