# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>AMEX NOOTER, LLC, )<br>    Defendant. ) | CAUSE NO.: 2:15-CV-195-PRC |

## OPINION AND ORDER

This matter is before the Court on ArcelorMittal's Motion to Compel Amex Nooter's Document Production of All Communications Between Amex Nooter and IOSHA [DE 31], filed by Plaintiff ArcelorMittal Indiana Harbor LLC ("ArcelorMittal") on December 15, 2015. Defendant Amex Nooter, LLC ("Amex Nooter") filed a response on December 30, 2015, and ArcelorMittal filed a reply on January 6, 2016. On January 14, 2016, Amex Nooter filed a Motion to Strike ArcelorMittal's Reply in Support of its Motion to Compel [DE 44]; ArcelorMittal filed a response on January 20, 2016, and Amex Nooter filed a reply on January 27, 2016. Finally, on February 3, 2016, Amex Nooter filed a Motion for Oral Argument [DE 50].

## A. Motion to Strike

In the Motion to Strike, Amex Nooter argues that ArcelorMittal raises for the first time in the reply brief new bases for discovering the settlement negotiations between Amex Nooter and Indiana Occupational Safety and Health Administration (IOSHA).

In the opening motion, ArcelorMittal argued that "Amex Nooter's communications with IOSHA are relevant, as they may shed light on the events that led to the fire and explosion, including whether the Amex Nooter employees were properly trained, whether the Amex Nooter employees properly engaged in all safety precautions, and whether the Amex Nooter employees were otherwise

negligent in their actions." (Pl. Mot. 2-3). In the reply, for the first time, ArcelorMittal suggests that it seeks the documents for additional purposes, such as for impeachment. In support, ArcelorMittal cites the deposition testimony of two Amex Nooter employees, contending that the deposition testimony shows that Amex Nooter may have misrepresented to IOSHA the events leading up to the fire and explosion at issue in this case.[1] This new legal and factual argument, raised for the first time in the reply brief, is not properly before the Court.

Also for the first time in its reply brief, ArcelorMittal asserts that "unqualified factual assertions" made in settlement negotiations are admissible under Rule 408. (Pl. Reply ¶ 4) (citing *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-CV-66, 2010 WL 779494, at *3-4 (S.D. Ind. Feb. 26, 2010)). This new argument is not properly before the Court for purposes of the Motion to Compel. Nevertheless, the Court addresses the reference to "unqualified factual assertions" because it is based on a portion of the *proposed* House amendment, reported in the advisory committee's note to the 1974 enactment of Rule 408, that was ultimately *not* included in the final version of Rule 408.

The advisory committee's note first quotes House Report No. 93-650, in which the House explained its proposed modification of the Supreme Court's proposed Rule 408; this House modification contains the reference to "unqualified factual assertions" cited by ArcelorMittal: "[T]he

---

[1] Rule 408 prohibits the use of settlement negotiations "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408.

ArcelorMittal cites *Bankcard America, Inc. v. Universal Bancard Systems*, 203 F.3d 477, 484 (7th Cir. 2000), in support of its argument that Rule 408 does not prohibit evidence offered for impeachment purposes. However, the court in *Bankcard America* was not dealing with "garden-variety impeachment" but rather a RICO claim between two sales organizations and the application of an estoppel exception to Rule 408, and the "court found that Rule 408 was not intended to permit a party to induce detrimental reliance on a promise made during negotiations and then assert confidentiality when the victimized party claimed estoppel." *Dow Chemical Co. and Subsidiaries v. United States*, 250 F. Supp. 2d 748, 805 (E.D. Mich. 2003) (rejecting the assertion that this holding in *Bankcard America* allowed a statement made for settlement purposes to impeach a denial of liability).

Committee recast the Rule so that admissions of liability or opinions given during compromise negotiations continue inadmissible, but *evidence of unqualified factual assertions is admissible*." Fed. R. Evid. 408 advisory committee's note to 1974 enactment (emphasis added) (citing House Report No. 93-650).

> The advisory committee's note then quotes Senate Report No. 93-1277:
>
> This rule as reported makes evidence of settlement or attempted settlement of a disputed claim inadmissible when offered as an admission of liability or the amount of liability. The purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible.
>
> Under present law, in most jurisdictions, statements of fact made during settlement negotiations, however, are excepted from this ban and are admissible. . . . Rule 408 as submitted by the [Supreme] Court reversed the traditional rule. It would have brought statements of fact within the ban and made them, as well as an offer of settlement, inadmissible.
>
> *The House amended the rule and would continue to make evidence of facts disclosed during compromise negotiations admissible*. It thus reverted to the traditional rule. . . .
>
> . . .
>
> For [stated reasons], the committee has deleted the House amendment and restored the rule to the version submitted by the Supreme Court . . . .

Fed. R. Evid. 408 advisory committee's note to 1974 enactment (emphasis added). Finally, the advisory committee's note explains that "[t]he Conference adopts the Senate amendment." Fed. R. Evid. 408 advisory committee's note to 1974 enactment (citing House Report No. 93-1597). Thus, neither the express language nor the history of Rule 408 supports an exception for "unqualified factual assertions."

Because the arguments raised for the first time in the reply brief are apparent on their face, the Court disregards the newly raised issues in ruling on the Motion to Compel rather than striking the entire brief. The Court denies the Motion to Strike.

**B. Motion to Compel**

On August 10, 2015, ArcelorMittal issued written discovery to Amex Nooter, including Request for Production No. 25, which seeks "[a]ny and all documents of Indiana OSHA's investigation of the incident, including all documents received from IOSHA, all communications with IOSHA, and all documents provided to IOSHA." (Pl. Mot., Ex. B). On November 9, 2015, Amex Nooter served Supplemental Responses and Objections to that discovery, including 167 pages of responsive documents:

> **INITIAL RESPONSE**:
>
> Amex Nooter objects to Request for Production No. 25 as duplicative of Request for Production Nos. 22, 23, and 24. Amex Nooter further objects to Request for Production No. 25 to the extent that the request seeks documents protected from disclosure pursuant to Federal Rule of Evidence 408. Without waiving any objections, including those regarding relevance and admissibility, Amex Nooter will provide all responsive, non-privileged, and non-protected documents received from, or provided to, IOSHA [in] its possession.
>
> **SUPPLEMENTAL RESPONSE**:
>
> Without waiving any objections, including those regarding relevance and admissibility, Amex Nooter has produced, or herewith produces, documents Bates-labeled: AMEX 000213 through AMEX 000215; and AMEX 000805 through AMEX 000972.

(Pl. Mot., Ex. C, p. 13). Amex Nooter withheld two documents, objecting that the documents contain confidential settlement negotiations and, thus, are protected from disclosure under Federal Rule of Evidence 408. *See* (Def. Resp., Ex. C, p. 13) (Amex Nooter LLC Privilege Log); *see also* (Pl. Mot., Ex. E, p. 2) (November 24, 2015 correspondence providing the privilege log).

4

As an initial matter, ArcelorMittal misrepresents the facts when it states that "Amex Nooter withheld from production *all communications* between Amex Nooter and IOSHA, claiming privilege under Federal Rule of Evidence 408." (Pl. Mot. 1-2) (emphasis added). Rather, Amex Nooter produced all the documents in its IOSHA file, with the exception of the two withheld documents. The documents produced include, among other things, investigation reports, *communications* between Amex Nooter and IOSHA, responsive discovery, witness statements, and all sixteen pages of the final settlement agreement between Amex Nooter and IOSHA. ArcelorMittal does not acknowledge this substantial production in either its motion or reply brief. Thus, when ArcelorMittal asks the Court to compel Amex Nooter to produce "all communications between Amex Nooter and [IOSHA]," ArcelorMittal is seeking only two documents.

Amex Nooter objects to producing the two documents, arguing that they are protected from discovery by Federal Rule of Evidence 408. In the Motion to Compel, ArcelorMittal asserts that Rule 408 limits only admissibility, not discoverability, and that Federal Rule of Civil Procedure 26(b)(1) permits the discovery of confidential settlement negotiations. The Court agrees with ArcelorMittal. Rule 408 does not limit the discovery of settlement negotiations; rather, whether settlement negotiations are discoverable is governed by the standard in Rule 26(b)(1).

Federal Rule of Evidence 408 provides:

**(a) Prohibited Uses.** Evidence of the following is not *admissible*–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> **(1)** furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim–except when offered in a criminal case and when the negotiations

5

> related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408 (emphasis added). By its own language, Rule 408 governs the admissibility of settlement negotiations and not their discoverability. *See Clark v. Experian Info. Solutions*, No. 03 C 7882, 2006 WL 626820, at *2 (N.D. Ill. Mar. 8, 2006) ("Rule 408 does not create any category of documents that is off limits from discovery. Rather, Rule 408 creates a narrow exclusion from admissibility as evidence."); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001) ("Rule 408 'only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery;' therefore, the rules governing discovery are applicable to settlement documents." (quoting *Morse/Diesel, Inc. v. Fidelity and Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)); *see also Polyone Corporation v. Lu*, No. 14 C 10369, 2015 WL 9489915, at *4 (N.D. Ill. Dec. 30, 2015) ("Rule 408 does not create a category of documents that is off limits from discovery. Rather, Rule 408 creates a narrow exclusion from admissibility as evidence."); *Meharg v. I-Flow*, No. 1:08-CV-184, 2009 WL 3032327, at *3 (S.D. Ind. Sept. 18, 2009) ("Rule 408 applies only to admissibility at trial, not to discovery.").[2]

Discovery of settlement negotiations is governed by Rule 26(b)(1), which defines the scope of discovery:

> Parties may obtain discovery regarding any *nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the

---

[2] In making this statement, the court was dealing with the discoverability of a settlement agreement by a non-settling party and not the discoverability of confidential settlement negotiations. *Meharg v. I-Flow Corp.*, No. 1:08-CV-184, 2009 WL 3032327, at *3 (S.D. Ind. Sept. 18, 2009).

6

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Fed. R. Civ. P. 26(b)(1) (amended Dec. 1, 2015) (emphasis added).

The recent amendment to Rule 26(b)(1), effective December 1, 2015, and applicable to this dispute, removed the familiar language that relevant information does not have to be admissible at the trial to be discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1) (2010) (amended Dec. 1, 2015).[3] The advisory committee's note explains that the language had been "used by some, incorrectly, to define the scope of discovery" as more broad than the scope set forth in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. "Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." *Id*. Neither party acknowledged this amendment nor discussed its impact on the instant dispute.

Thus, the Court considers whether the two settlement negotiation documents at issue in this case are discoverable under Rule 26(b)(1). First, the information is not privileged because there is no federal privilege regarding settlement negotiations. *See Pactive Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2012 WL 1831517, at *5 (N.D. Ill. May 18, 2012); *see also United States v. Dish Network, L.L.C.*, 943 F. Supp. 2d 891, 895 (2013) ("Plaintiffs are correct that no generally

---

[3] "Generally a new procedural rule applies to the uncompleted portions of suits pending when the rule became effective . . . ." *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957, 959 (7th Cir. 2000) (addressing the amendment of Federal Rule of Civil procedure 23(f)). In its order approving the amendments, dated April 29, 2015, the United States Supreme Court ruled that the amendments "shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." http://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf (Last visited Feb. 16, 2016). Although the discovery request was served prior to December 1, 2015, the motion was filed and briefed after that date. Thus, this Court's analysis proceeds under the new verison of Federal Rule of Civil Procedure 26(b)(1) as both just and practicable.

7

recognized settlement-negotiation privilege exists." (citing *Pactive Corp.*, 2012 WL 1831517, at *5)); *Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, 270 F.R.D. 437, 438-39 (E.D. Wis. 2010) ("[T]he court agrees with the cases which find that there is no federal privilege preventing the discovery of settlement agreements and related documents."); *Clark*, 2006 WL 626820, at *2. As noted above, Rule 408 does not apply to the discovery of settlement negotiations. In *Pactive Corp.*, the court reasoned that new federal privileges are not to be created by courts lightly and that liberal discovery is the rule. *Id.* at *5. Similarly, the court in *Steele v. Lincoln Financial Group* found no privilege established by Rule 408 but rather that the discovery of settlement negotiations between the plaintiff's employer (the defendant in *Steel*) and the EEOC was governed by Rule 26, which provides for liberal discovery. No. 05 C 7163, 2007 WL 1052495, at *4 (N.D. Ill. Apr. 3, 2007).

Several district court cases in the Seventh Circuit Court of Appeals have recognized that Rule 408 does not shield discovery of settlement negotiations but nevertheless adopted a higher standard for discovering the settlement negotiations based on the pre-amendment language of Rule 26(b)(1) that otherwise inadmissible evidence is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." *See Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 762 (N.D. Ill. 2010); *Steele*, 2007 WL 1052495, at *3-4; *Clark*, 2006 WL 626820, at *2-3; *Vardon Golf Co. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 651-52 (N.D. Ill. 1994).[4]

In *Vardon*, the court found that information relating to settlement negotiations between the parties to the ongoing litigation was not subject to discovery because the negotiations were sought only to prove the amount of a reasonable royalty, an inadmissible purpose under Rule 408, and there

---

[4] *VanGilder v. Baker*, 2008 WL 2225647, at *4 (N.D. Ind. May 27, 2008), cited by ArcelorMittal in its reply brief, is inapposite because it concerned the admissibility of settlement negotiations at trial in a ruling on a motion in limine and did not address the discovery of the settlement negotiations.

was no showing that the settlement evidence was "reasonably calculated to lead to discovery of other admissible evidence." 156 F.R.D. at 651 (reasoning that settlement negotiations would not be a reliable basis for calculating a reasonable royalty because of the many factors involved in the negotiations and because "settlement often lacks reliability as to the true value of a claim" (citing *Universal Athletic Sales Co. v. Am. Gym*, 480 F. Supp. 408, 414 (W.D. Pa. 1979))). The court also focused on the policy enshrined in Rule 408 of favoring freely negotiated settlements and was concerned about chilling the parties' willingness to enter into settlement negotiations. *Id*. at 652.

The court in *Clark* recognized that there is no broad rule that information relating to settlement negotiations is outside the scope of discovery, or "privileged," as a result of Rule 408 because "Rule 408 does not create any category of documents that is off limits from discovery." *Clark*, 2006 WL 626820, at *2-3. Nevertheless, the court adopted the test in *Vardon*: "[T]o obtain information that would be inadmissible because of Rule 408, the proponent of discovery *must* demonstrate that it is admissible for another purpose or by showing how discovery of the item might lead to other admissible evidence." *Id*. (emphasis added) (citing *Vardon*, 156 F.R.D. at 651).

In *Steele*, a workplace sexual harassment case, the plaintiff sought information from the settlement negotiations between her employer and the EEOC. 2007 WL 1052495, at *3. The employer did not dispute that the evidence was relevant but rather that it was discoverable. *Id*. at *4. The court in *Steele* recognized that there is no privilege established under Rule 408 because "[e]ven under Rule 408 . . . settlement discussions between the parties to the litigation may be admissible so long as they are not used to prove liability." *Id*. As the discovery sought in *Steele* was not between parties but rather was between the employer (a party to the litigation) and the EEOC (a nonparty), the court found that "[i]f that information might have utility (i.e., relevance) beyond

9

proving liability, discovery should not be peremptorily foreclosed." *Id*. The court considered whether the settlement negotiations were discoverable under the liberal discovery standard of Rule 26(b)(1). *Id*. However, because the plaintiff had made no attempt to explain what relevance the information might have had beyond proving liability, the court did not allow the discovery. *Id*. at *4. Applying the pre-amendment language of Rule 26(b)(1), the court reasoned that, notwithstanding liberal discovery, "discovery which can only lead to inadmissible evidence is prohibited by the plain language of Rule 26." *Id*.

Finally, the court in *Pfizer*, like the other courts, recognized that there is no broad settlement privilege. 731 F. Supp. 2d at 762-63 (citing *Steele*, 2007 WL 1052495, at *4; *Vardon*, 156 F.R.D. 641)). Yet, the court acknowledged the holdings in *Steele* and *Vardon* that "caution against discovery of settlement discussions." *Id*. at 764. In its own analysis, the *Steele* court discussed only Rule 408 and not Rule 26(b)(1). *Id*. at 762-64. The court held that "the weight of authority bars [the defendant] from discovering documents relating to or created during settlement negotiations involving [the plaintiff and third parties.]" *Id*. at 764. In addition, the court reasoned that the defendant was not seeking the settlement negotiations to challenge the settlements themselves but rather to "disprove liability, which Rule 408 prohibits." *Id*. The court then allowed discovery of the settlement agreements themselves, but nothing more. *Id*.

The reliance in *Vardon*, *Clark*, and *Steele* (and *Pfizer*'s reliance on *Vardon* and *Clark*) on the pre-amendment language of Rule 26(b)(1) to limit the discovery of settlement negotiations is no longer persuasive. Rule 26(b)(1) expressly provides that evidence need not be admissible to be

discoverable. The only question then is whether the discovery sought meets the standard set out in Rule 26(b)(1) for relevance and proportionality.[5]

In the Motion to Compel, ArcelorMittal contends that the settlement negotiations between Amex Nooter and nonparty IOSHA are relevant under Rule 26(b)(1) as the documents "may shed light on the events that led to the fire and explosion, including whether the Amex Nooter employees were properly trained, whether the Amex Nooter employees properly engaged in all safety precautions, and whether the Amex Nooter employees were otherwise negligent in their actions." (Pl. Mot. 2-3). The Court agrees.

Although the settlement negotiations themselves would not be admissible at trial on the topics proposed by ArcelorMittal to "prove or disprove the validity or amount" of the claim, relevant evidence need not be admissible to be discoverable. *See* Fed. R. Evid. 408; Fed. R. Civ. P. 26(b)(1). However, information within the settlement negotiations will likely allow ArcelorMittal to conduct additional relevant discovery on those topics. And, the settlement negotiations may be admissible under one of the exceptions to Rule 408 for some purpose other than the impermissible purposes of proving the validity or amount of the claim or impeaching by a prior inconsistent statement or a contradiction. ArcelorMittal has met its burden of explaining how the negotiations are relevant. *See White*, 203 F.R.D. at 368 (not allowing discovery of settlement negotiations that had led to a settlement between the parties in the ongoing litigation because the party seeking the settlement negotiations had not demonstrated "how the negotiations, as compared to an actual settlement agreement, may be *relevant* to the ongoing litigation").

---

[5] As noted earlier, neither party acknowledged the 2015 amendment to Rule 26(b)(1) in its brief. Therefore, neither party addressed the impact of the amendment on the prior case law applicable to the instant motion.

Proportionality, which was added to the definition of the scope of discovery with the December 1, 2015 amendment to Rule 26(b)(1), has not been briefed as neither party cited the amended rule. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("[I]f the parties continue to disagree [about proportionality], the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983. . . . The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.").

In addition, the Court sees no reason to limit this discovery on its own under Rule 26(b)(2)(iii) based on the arguments and information that have been presented. *See* Fed. R. Civ. Pl. 26(b)(2)(iii) ( "On motion or on its own, the court must limit . . . the extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." The Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under this standard, discovery of the settlement negotiations appears proportional. The questions of liability and damages are central to the issues at stake in this action. Although ArcelorMittal does not state a damages request in the Complaint, the amount in controversy likely well exceeds $75,000.00 given that ArcelorMittal seeks monetary damages for damage to its Number 3 Blast Furnace following an explosion and fire. Although ArcelorMittal has other means, for example through depositions, of possibly obtaining information similar to that contained within these documents, ArcelorMittal cannot obtain the exact information through any other means. The parties' resources do not impact this analysis. The

settlement negotiations may provide important information to the resolution of the issues, although they are only a small part of the available discovery. The burden and expense on Amex Nooter in producing these documents is low.

Finally, as noted by Amex Nooter, the courts in *Vardon*, *Clark*, and other cases recognize that the "purpose of Rule 408 to encourage settlement of disputes might be chilled by fear that negotiations might be discoverable, and have sought to balance furthering that purpose with the policy of liberal discovery." *Clark*, 2006 WL 626820, at *3 (citing *White*, 203 F.R.D. at 368; *Vardon*, 156 F.R.D. at 650, 652); *see also Evansville*, 2010 WL 779494, at *3-4 (recognizing that "Rule 408 was enacted expressly to encourage settlement discussions"). However, any concerns regarding confidentiality of settlement negotiations in this context of relevant discovery, even between a party and a nonparty, can be remedied by a protective order.

Therefore, the Court overrules Amex Nooter's objection to producing the two documents containing settlement negotiations listed on its privilege log and grants the Motion to Compel. Amex Nooter may designate these pages as "confidential and protected" pursuant to the January 11, 2016 Stipulated Protective Order entered in this case.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** ArcelorMittal's Motion to Compel Amex Nooter's Document Production of All Communications Between Amex Nooter and IOSHA [DE 31], **DENIES** the Motion to Strike ArcelorMittal's Reply in Support of its Motion to Compel [DE 44], and **DENIES** the Petition for Oral Argument of Amex Nooter, LLC [DE 50]. The Court **ORDERS** Amex Nooter to serve the two documents on ArcelorMittal in a supplemental response to Request for Production No. 25 on or before **February 23, 2016**. Amex Nooter may designate

those documents as "confidential and protected" pursuant to the January 11, 2016 Stipulated Protective Order entered in this case

    SO ORDERED this 16th day of February, 2016.

                                            s/ Paul R. Cherry
                                            MAGISTRATE JUDGE PAUL R. CHERRY
                                            UNITED STATES DISTRICT COURT