# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>AMEX NOOTER, LLC, )<br>    Defendant. ) | CAUSE NO.: 2:15-CV-195-PRC |

## OPINION AND ORDER

This matter is before the Court on Amex Nooter's Motion to Reconsider this Court's February 16, 2016 Order, to Stay, and, in the Alternative, to Certify Pursuant to 28 U.S.C. § 1292(b) [DE 55], filed by Defendant Amex Nooter, LLC ("Amex Nooter") on February 22, 2016. Plaintiff ArcelorMittal Indiana Harbor LLC ("Indiana Harbor") filed a response on March 7, 2016, and Amex Nooter filed a reply on March 14, 2016. Also before the Court is a Petition for Oral Argument of Amex Nooter, LLC [DE 58], filed by Amex Nooter on February 26, 2016.

## BACKGROUND

On August 10, 2015, Indiana Harbor issued written discovery to Amex Nooter, including Request for Production No. 25, which seeks "[a]ny and all documents of Indiana OSHA's investigation of the incident, including all documents received from IOSHA, all communications with IOSHA, and all documents provided to IOSHA." (Pl. Mot., Ex. B). On November 9, 2015, Amex Nooter served Supplemental Responses and Objections to that discovery, including 167 pages of responsive documents:

> **INITIAL RESPONSE**:
>
> Amex Nooter objects to Request for Production No. 25 as duplicative of Request for Production Nos. 22, 23, and 24. Amex Nooter further objects to Request for Production No. 25 to the extent that the request seeks documents protected from disclosure pursuant to Federal Rule of Evidence 408. Without waiving any

> objections, including those regarding relevance and admissibility, Amex Nooter will provide all responsive, non-privileged, and non-protected documents received from, or provided to, IOSHA [in] its possession.
>
> **SUPPLEMENTAL RESPONSE**:
>
> Without waiving any objections, including those regarding relevance and admissibility, Amex Nooter has produced, or herewith produces, documents Bates-labeled: AMEX 000213 through AMEX 000215; and AMEX 000805 through AMEX 000972.

(Pl. Mot. to Compel, Ex. C, p. 13). Amex Nooter withheld two documents, objecting that the documents contain confidential settlement negotiations and, thus, are protected from disclosure under Federal Rule of Evidence 408. *See* (Def. Resp. to Mot. to Compel, Ex. C, p. 13) (Amex Nooter LLC Privilege Log); *see also* (Pl. Mot. to Compel, Ex. E, p. 2) (November 24, 2015 correspondence providing the privilege log).

On December 15, 2015, Indiana Harbor filed a Motion to Compel the production of the two withheld confidential settlement negotiation communications between Amex Nooter and IOSHA. In its response brief, Amex Nooter objected to the production of the documents as privileged under Federal Rule of Evidence 408.

On February 16, 2016, the Court granted the Motion to Compel, finding that Rule of Evidence 408 governs only the admissibility and not the discoverability of confidential settlement negotiations and that the discovery of settlement negotiations is governed by Federal Rule of Civil Procedure 26(b)(1). (Feb. 16, 2016 Opinion and Order 6, 7). Finding that there is no federal privilege protecting settlement negotiations and considering the applicable relevance standard in Federal Rule of Civil Procedure 26, the Court found that Indiana Harbor had shown that the settlement negotiations were relevant and nonprivileged, and, thus, discoverable, even if the settlement negotiations themselves ultimately may not be admissible under Rule 408. In its analysis, the Court

applied Rule 26(b)(1), as amended on December 1, 2015. The Court ordered Amex Nooter to produce the two documents to ArcelorMittal.

**ANALYSIS**

In the instant motion, Amex Nooter asks the Court to reconsider the ruling, to stay Amex Nooter's obligation to produce the two documents, and, in the alternative, to certify the issue pursuant to 28 U.S.C. § 1292(b). As an interim step, the Court granted the request to stay Amex Nooter's obligation to produce the two documents pending the Court's ruling on the merits of this motion. The Court finds that oral argument would not assist in the resolution of this motion.

**A. Motion to Reconsider**

"Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); *see also United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." (citing *Bank of Waunakee*, 906 F.2d at 1191)). Because the Court did not misapprehend the facts, the parties' positions, or the controlling law and did not make a decision outside the adversarial issues presented by the parties, the Court denies Amex Nooter's Motion to Reconsider.

In the motion, Amex Nooter does not contest the Court's finding that Rule 408 governs only the admissibility of evidence and not its discoverability or that there is no federal privilege for

settlement negotiations. The basis for Amex Nooter's Motion to Reconsider is that the Court erred in its analysis of the December 1, 2015 amendment to Federal Rule of Civil Procedure 26(b)(1) and the effect of the amendment on pre-amendment case law.

Prior to December 1, 2015, Rule 26(b)(1) provided:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence*. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) (prior to the Dec. 1, 2015 amendment) (emphasis added). As of December 1, 2015, Rule 26(b)(1) now provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Fed. R. Civ. P. 26(b)(1) (amended Dec. 1, 2015) (emphasis added).

In its February 16, 2016 Opinion and Order, the Court acknowledged that the oft-cited "reasonably calculated to lead to the discovery of admissible evidence" language was removed from the rule through the amendment because it had been used "'by some, incorrectly, to define the scope of discovery' as more broad than the scope set forth in Rule 26(b)(1)." (Feb. 16, 2016 Opinion and Order 7 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment)). The Court further cited the advisory committee's note that "[d]iscovery of nonprivileged information not

4

admissible in evidence remains available so long as it is otherwise within the scope of discovery."

*Id*.

The Court then addressed the pre-amendment case law. Prior to the amendment, several district court cases in the Seventh Circuit Court of Appeals had recognized that Rule 408 does not shield discovery of settlement agreements but nevertheless adopted a higher standard for discovering settlement negotiations based on the pre-amendment language that otherwise inadmissible evidence is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." (Feb. 16, 2016 Opinion and Order 8 (citing *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 762 (N.D. Ill. 2010); *Steele v. Lincoln Fin. Grp.*, No. 05 C 7163, 2007 WL 1052495, at *3-4 (N.D. Ill. Apr. 3, 2007); *Clark v. Experian Info. Solutions*, No. 03 C 7882, 2006 WL 626820, at *2-3 (N.D. Ill. Mar. 8, 2006); *Vardon Golf Co. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 651-52 (N.D. Ill. 1994))).[1] After summarizing the holdings in each of the four cited cases, this Court found that the reasoning in each based on the "pre-amendment language of Rule 26(b)(1) to limit the discovery of settlement negotiations is no longer persuasive" because Rule 26(b)(1) now expressly provides that evidence

---

[1] Although this Court did not discuss *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n. 20 (7th Cir. 1979), in the February 16, 2016 Opinion and Order because *General Motors Corp.* was concerned with settlement negotiations between parties within the ongoing litigation, the Court now briefly addresses the case because the parties discuss it on the instant motion. The Seventh Circuit Court of Appeals in *General Motors Corp.* found that the trial court had abused its discretion by not allowing discovery into the settlement negotiations because the negotiations were relevant to the fairness of the class action settlement in that case. *Id.* at 1124. In a footnote, the court commented that there was no basis for an objection to the discovery of settlement negotiations based on a privilege. *Id.* at 1124 n. 20. The court reasoned:
> Inquiry into the conduct of the negotiations is also consistent with the letter and the spirit of Rule 408 of the Federal Rules of Evidence. That rule only governs admissibility. It simply bars admission of evidence of compromise negotiations to prove liability or damages and expressly provides that it "does not require exclusion when evidence is offered for another purpose . . . ." The rule is grounded on the policy of encouraging the settlement of disputed claims without litigation. That policy is not undermined here.

*Id*. The court went on to discuss the expectation in class action cases of the requisite trial court approval of a settlement agreement. *Id*. Thus, the discussion in *General Motors Corp.* suggests that the Seventh Circuit Court of Appeals favors the discoverability of settlement negotiations.

need not be admissible to be discoverable. *Id*. at 9-11. Thus, the only question is whether the discovery sought meets the standard set out in Rule 26(b)(1) for relevance and proportionality.

The Court then found that Indiana Harbor had demonstrated that the settlement negotiations were relevant under Rule 26(b)(1) because Indiana Harbor argued that they "may shed light on the events that led to the fire and explosion, including whether the Amex Nooter employees were properly trained, whether the Amex Nooter employees properly engaged in all safety precautions, and whether the Amex Nooter employees were otherwise negligent in their actions." The Court further reasoned that the settlement negotiations may be admissible under one of the exceptions to Rule 408. Finally, the Court reasoned that the discovery request was proportional.

In the instant Motion to Reconsider, Amex Nooter does not argue that the settlement negotiations are not relevant; in fact, Amex Nooter did not contest relevance in opposing Indiana Harbor's Motion to Compel. And, Amex Nooter does not question or ask for reconsideration of the Court's proportionality analysis. Amex Nooter does argue that the reasons given by Indiana Harbor as to relevance have already been the subject of depositions of Amex Nooter employees and over 1,400 documents produced by Amex Nooter in discovery, including the 167 documents related to the IOSHA proceedings. However, Amex Nooter does not object that the production of the two settlement negotiation documents is burdensome or duplicative; there may be information in the two documents that is not contained in the other forms of related discovery.

Amex Nooter's primary argument is that the Court erred by using the December 1, 2015 amendment to Rule 26(b)(1) to broaden the scope of discovery when the intended effect of the amendment was to narrow the scope of discovery. Amex Nooter also contends that the Court improperly declined to follow the pre-amendment cases.

6

As an initial matter, the Court's consideration of the controlling, applicable Federal Rule of Civil Procedure on the issue directly before the Court does not constitute making "a decision outside the adversarial issues presented by the parties." The adversarial issue presented and decided was whether the settlement negotiations are discoverable, and the amendment to Rule 26(b)(1) was in effect *before* the Motion to Compel was filed.

Also, throughout its briefing, Amex Nooter gives the false impression that the district court cases of *Pfizer*, *Vardon*, *Steel*, and *Clark* are binding on this Court. They are not. In the opening brief, Amex Nooter accuses the Court of "overturning and/or disregarding pre-existing authorities." (Def. Mot. 7). In its reply brief, Amex Nooter states that it seeks certification of the question to the Seventh Circuit Court of Appeals "confirming that longstanding precedent protecting confidential settlement communications . . . remains controlling." (Def. Reply 1). All of the cited authorities are district court cases, which are only persuasive, and not mandatory, authority. Moreover, this Court has no authority to "overturn" the decision of any court other than itself; only the Seventh Circuit Court of Appeals can "overturn" the decision of a district court.

Amex Nooter is correct that the purpose of the amendment to Rule 26(b)(1) was to narrow the scope of discovery because the language "reasonably calculated to lead to the discovery of admissible evidence" had been incorrectly used by some to define the scope of discovery as more broad than intended. However, Amex Nooter misunderstands the effect of the Court's February 16, 2016 ruling. The Court's ruling does not expand discovery beyond what is permitted under the amendment; rather, it was the *prior* courts' reliance on the pre-amendment language that narrowed the normal scope of discovery when settlement negotiations were at issue by creating a heightened standard of discovery. The tendency to this heightened standard was facilitated by the intersection

7

of the pre-amendment language in Rule 26(b)(1) that "[r]elevant evidence need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" and Rule 408, which governs the admissibility of settlement negotiations. The deletion of the "appears reasonably calculated to lead to the discovery of admissible evidence" language from amended Rule 26(b)(1) removes the linguistic basis for the heightened standard developed by those courts, beginning with *Vardon*. Thus, when this Court found those rulings no longer "persuasive," the Court meant that the reasoning based on the pre-amendment language was no longer tenable.

The Court's rejection of the pre-amendment cases is further supported by the section in the April 2014 report of the Advisory Committee on Civil Rules addressing the amendment, most of which Amex Nooter quotes in its instant motion. For example, the Report provides at the outset: "The new provision carries forward the central principle—nonprivileged information is discoverable so long as it is within the scope of discovery, even though the information is in a form that would not be admissible in evidence." Advisory Committee on Rules of Civil Procedure–April 2014, http://www.uscourts.gov/rules-policies/archives/agenda-books/advisory-committee-rules-civil-procedure-april-2014, p. 86 (last visited July 8, 2016). As noted by Amex Nooter, the Report explains: "In other words, the sentence has never been intended to define the scope of discovery. It is merely a *ban* on admissibility-based refusals to provide relevant discovery." *Id.* (emphasis added). The pre-amendment courts that relied on the removed language were doing just that—creating an "admissibility-based refusal to provide relevant discovery." In fact, Amex Nooter now asks the Court to do what the amendment intends to reassert as impermissible—make an admissibility-based refusal to provide the two relevant settlement negotiation documents.

8

Thus, both before and after the amendment, admissibility-based refusals to provide relevant discovery are banned. The Court has not broadened the scope of permissible discovery under the amended rule. The Court has applied the proper test of relevance and proportionality for determining whether settlement negotiations are discoverable.

Another nuance misunderstood by Amex Nooter is that, although the settlement negotiations are not admissible themselves to prove liability under Rule 408, Indiana Harbor is permitted to use the settlement negotiations to discover other evidence that ultimately proves Indiana Harbor's case. And, as noted by this Court in its Opinion and Order, Indiana Harbor may be able to use the settlement negotiations themselves for purposes that are not prohibited by Rule 408.

Therefore, the Court denies the Motion to Reconsider.

## B. Interlocutory Appeal

In the alternative, Amex Nooter asks the Court to certify this discovery question for interlocutory appeal. Requests for interlocutory appeal are governed by 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Thus, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

Amex Nooter asks that the following question be certified:

> Do the 2015 amendments to Rule 26(a)[sic] broaden the scope of discoverable material to include confidential settlement negotiations, overturning existing authorities in this circuit that hold that such information is not discoverable?

(Def. Br. 11).

Amex Nooter first argues that this question affects settlement negotiations nationwide as parties will fear that previously protected settlement communications are now discoverable and can be used against them down the road. As of the date of this Opinion and Order, no case reported in Westlaw has cited the Court's February 16, 2016 Opinion and Order. Moreover, as set forth in the preceding section, settlement negotiations have always been discoverable if relevant and, indeed, admissible at trial if not used for an impermissible purpose under Rule 408. The discovery of any settlement negotiations is limited by relevance and proportionality; this Court's ruling does not make settlement negotiations open to the public.

In its February 16, 2016 Opinion and Order, the Court addressed the concern voiced in cases such as *Vardon* and *Clark* about the potential chilling effect of allowing discovery of settlement negotiations on parties' willingness to engage in settlement discussions. The Court found that any concerns regarding the confidentiality of the settlement negotiations between Defendant Amex Nooter and nonparty IOSHA can be remedied through the protections of the Protective Order already in place in this litigation; Amex Nooter does not argue in its opening brief that the Protective Order is insufficient in this case. In its reply brief, Amex Nooter argues that a protective order is "not a meaningful remedy" and "has no effective way of preventing the misuse of those communications, directly or indirectly, against the settling party, here Amex Nooter." (Def. Reply 5). Yet, Amex Nooter does not explain how the communications could be misused.

10

Amex Nooter next argues that there are grounds for differences of opinion with respect to the Court's Opinion and Order. Amex Nooter argues that, until the Court's February 16, 2016 Opinion and Order, district courts within the Seventh Circuit Court of Appeals "regularly ruled that settlement communications were not discoverable," citing *Vardon*. Although the Court disagrees with Amex Nooter's characterization of the holding in *Vardon*, the Court agrees that the ruling is contestable.

However, the issue is neither controlling nor will it speed up the litigation. Amex Nooter argues only that, because Amex Nooter intends to appeal this issue following final judgment, the issue should not be left to "fester" and lessen the chances of a negotiated settlement. This is not a basis for granting an interlocutory appeal. And, it is more likely that the disclosure of the settlement communications will foster, not discourage, a negotiated settlement in this case.

Because certifying this case for interlocutory appeal would not materially advance the ultimate termination of this litigation, the Court denies the alternative motion to certify pursuant to 28 U.S.C. § 1292(b).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Petition for Oral Argument of Amex Nooter, LLC [DE 58] and **DENIES** Amex Nooter's Motion to Reconsider this Court's February 16, 2016 Order, to Stay, and, in the Alternative, to Certify Pursuant to 28 U.S.C. § 1292(b) [DE 55], filed by Defendant Amex Nooter, LLC ("Amex Nooter"). The Court **LIFTS** the stay on Amex Nooter's production of the two documents and orders that Amex Nooter produce the two settlement negotiation documents to ArcelorMittal on or before **July 15, 2016**. As previously ordered, Amex

Nooter may designate those documents as "confidential and protected" pursuant to the January 11, 2016 Stipulated Protective Order entered in this case.

SO ORDERED this 8th day of July, 2016.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT