# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:15-CV-195-PRC |
| | ) | |
| AMEX NOOTER, LLC, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion of Amex Nooter, LLC to Dismiss [DE 48], filed by Defendant Amex Nooter, LLC ("Amex Nooter") on January 29, 2016. Plaintiff ArcelorMittal Indiana Harbor LLC ("Indiana Harbor") filed a response on February 12, 2016, and Amex Nooter filed a reply on February 19, 2016. This matter is also before the Court on a Motion of Amex Nooter, LLC's to Supplement the Record in Further Support of Its Motion to Dismiss and Its Reply in Support [DE 68], which was fully briefed on May 6, 2016.

## PROCEDURAL BACKGROUND

On May 15, 2015, Plaintiff Indiana Harbor filed a Complaint against Defendant Amex Nooter, and, on July 14, 2015, Amex Nooter filed its Answer. On December 21, 2015, Indiana Harbor filed an Amended Complaint.

According to a Supplemental Jurisdictional Statement, filed on June 28, 2016, on the Court's Order, Plaintiff Indiana Harbor is a limited liability company, whose sole member is ArcelorMittal USA LLC. ArcelorMittal USA LLC is a limited liability company whose sole member is ArcelorMittal USA Holdings II LLC. ArcelorMittal USA Holdings II LLC is a limited liability company whose sole member is ArcelorMittal Holdings LLC. ArcelorMittal Holdings LLC is a limited liability company whose sole member is ArcelorMittal USA Holdings LLC. ArcelorMittal

USA Holdings LLC is a limited liability company whose sole member is Ispat Inland S.A.R.L., which is wholly owned by ArcelorMittal S.A., a Luxembourg corporation with its principal place of business in Luxembourg. According to a Second Supplemental Jurisdictional Statement, filed on July 12, 2016, on the Court's order, Ispat Inland S.A.R.L. was formed in the country of Luxembourg, is a Luxembourg entity, and has its principal place of business in Luxembourg City, Luxembourg.

Amex Nooter's Federal Rule of Civil Procedure 7.1 statement, filed with this Court on June 25, 2015, provides that Amex Nooter LLC is a Missouri limited liability company that is wholly owned by Nooter Construction Company, a Missouri corporation. The Supplemental Jurisdictional Statement provides that Nooter Construction Company's principal place of business is St. Louis, Missouri.

The following facts are taken from the allegations of the Amended Complaint and the documents attached to the Amended Complaint.

Indiana Harbor is a steel manufacturer. Amex Nooter is an experienced pipefitter contractor. On April 3, 2013, there was an explosion and fire at the Number 3 Blast Furnace at Indiana Harbor's Indiana Harbor West Facility in East Chicago, Indiana. The explosion and fire injured two Amex Nooter pipefitter employees–Korrie Griffith and Robert Swimline–and caused extensive damage to Indiana Harbor's facility. Indiana Harbor alleges that the injuries and damage were the result of the improper actions of Amex Nooter.

Twenty months earlier, on August 19, 2011, ArcelorMittal USA LLC ("ArcelorMittal USA") entered into a Contractor Work Master Agreement ("AMUSA-102 Master Agreement") with Amex Nooter for work to be performed for "ArcelorMittal Companies in the USA." (Am. Compl., Ex. A).

Under the AMUSA-102 Master Agreement, ArcelorMittal USA is the "Owner Signatory" and Amex Nooter is the "Contractor." *Id.* (Execution Sheet).

The AMUSA-102 Master Agreement provides that an "Owner" may issue a Purchase Order to Amex Nooter. *See* (Am. Compl., Ex. A, Execution Sheet, ¶ 1.c). The AMUSA-102 Master Agreement defines "Owner" as the "Owner Company issuing the Purchase Order applicable to this Contractor Work Contract." (Am. Compl., Ex. A, p. 2 of AMUSA-102 General Terms and Conditions, § 1(x)). "Owner Companies" is defined as "Owner Signatory and any entity that is organized under the laws of a state in the United States and is directly or indirectly controlled by, or under control of ArcelorMittal SA." *Id.* § 1(xi).

A Purchase Order contains the nature and scope of the services that the Contractor is to provide and the price or manner for calculating the price to be paid to the Contractor for its services outlined in the Purchase Order. *See* (Am. Compl., Ex. A, Execution Sheet, ¶ 1.c).

The AMUSA-102 Master Agreement provides that a Contractor may accept a Purchase Order "either by express acceptance thereof or by beginning performance of the Contractor Work specified therein." *See* (Am. Compl., Ex. A, Execution Sheet, ¶ 3). In addition, "*[e]ach Contractor acceptance of a Purchase Order shall create a separate binding and enforceable contract (a "Contractor Work Contract")* with respect thereto, with each Contractor Work Contract consisting of the Safety Handbook, the AMUSA-102 General Terms and Conditions, the Purchase Order, and any Other Contractual Documents." *See id.* (emphasis added).

The AMUSA-102 Master Agreement provides that the "Owner Signatory" (ArcelorMittal USA) is not liable or responsible to the Contractor (Amex Nooter) for the Owner's failure to pay

for work or any other Owner default or breach of a Contractor Work Contract. *See* (Am. Compl., Ex. A, Execution Sheet, ¶ 1.c).

On March 12, 2013, Indiana Harbor issued to Amex Nooter Purchase Order Nos. N489391 and N489392, which defined the scope of services to be performed by Amex Nooter on April 3, 2013. *See* (Am. Compl., Ex. B). Pursuant to the Purchase Orders, Amex Nooter was to rebuild the excess gas bleeder pilot burner cabinets at Blast Furnace No. 3 and Blast Furnace No. 4 at Indiana Harbor's Indiana Harbor West facility in East Chicago, Indiana. Amex Nooter was to replace natural gas lines and compressed air lines in the pilot ignitor cabinet and main burner cabinet at the two blast furnaces. On April 3, 2013, Amex Nooter began performing the work outlined in the Purchase Orders. *See* (Am. Compl., Ex. A, Execution Sheet, ¶ 3).

Pursuant to Section 3 of the AMUSA-102 General Terms and Conditions, AmexNooter was required to comply with the Safety Handbook. *See* (Am. Compl., Ex. A, p. 4 of AMUSA-102 General Terms and Conditions).

Pursuant to Section 22 of the AMUSA-102 General Terms and Conditions, Amex Nooter agreed to indemnify, defend, and save harmless the Owner from and against any and all claims, including lawsuits and demands, made in connection with services provided by Amex Nooter on the Owner's premises. (Am. Compl., Ex. A, p. 18 of AMUSA-102 General Terms and Conditions, § 22(a)). Section 22 further provides that, "[i]n the event of any Claim covered under Section 22(a) above, immediately upon Owner's demand Contractor shall assume at its expense . . . the defense of any action . . . that may be brought against [Owner]." *Id*. at § 22(b).

Pursuant to Section 23 of the AMUSA-102 General Terms and Conditions, Amex Nooter agreed to obtain commercial general liability insurance that covered the Owner as an additional

insured with respect to claims arising out of the work being performed by Amex Nooter on the Owner's premises.

The April 3, 2013 fire at Blast Furnace No. 3 is alleged to be the result of the negligent actions of Amex Nooter and its employees when the employees removed a valve, natural gas rushed out, and the natural gas was ignited by a nearby space heater, causing a fire that engulfed the cabinet and caused injuries to Swimline and Griffith. Substantial damage was done to the blast furnaces and the surrounding area as a result of the explosion and fire.

In a separate litigation, Swimline filed suit against Indiana Harbor on August 1, 2014, alleging that Indiana Harbor is liable for his injuries. Believing that the Swimline lawsuit is a "Claim" as defined by Section 1(iii) of the AMUSA-102 General Terms and Conditions and covered by Sections 22 and 23, "ArcelorMittal" tendered its defense of the Swimline lawsuit to Amex Nooter on December 10, 2013, and again on August 28, 2014. (Am. Compl. ¶ 56).[1] Amex Nooter has failed and/or refused to defend that lawsuit.

The Amended Complaint in this case makes the following legal claims. In Count I, titled "Negligence," Indiana Harbor alleges that Amex Nooter breached its duty to conduct its work in a reasonably safe manner to avoid damage to Indiana Harbor's property. In Count II, titled "Defense," Indiana Harbor alleges that Amex Nooter agreed to defend Indiana Harbor against any and all claims arising out of the work it performed pursuant to the Purchase Orders and that Amex Nooter breached the contract by refusing or failing to defend Indiana Harbor in the separate lawsuit brought by Robert Swimline. In Count III, titled "Breach of Contract," Indiana Harbor alleges that Amex

---

[1] As discussed in the Analysis below, the Amended Complaint does not allege that "Indiana Harbor" tendered a defense or that "ArcelorMittal USA" tendered a defense; rather, the Amended Complaint alleges that "ArcelorMittal" tendered its defense. *See* (Am. Compl. ¶ 56).

Nooter's performance of the work outlined in the Purchase Orders created binding and enforceable Contractor Work Contracts, consisting of the Purchase Orders, Safety Handbook, and the AMUSA-102 General Terms and Conditions; Indiana Harbor alleges that Amex Nooter breached the agreements.

On January 11, 2016, Amex Nooter filed an Answer to the Amended Complaint. On January 29, 2016, Amex Nooter filed an Amended Answer[2] and also filed the instant Motion to Dismiss, seeking dismissal of Counts II and III. Indiana Harbor filed a response to the Motion to Dismiss on February 12, 2016, and Amex Nooter filed a reply on February 19, 2016.

On April 13, 2016, Amex Nooter filed a Motion to Supplement the Record in Further Support of Its Motion to Dismiss and Its Reply in Support. Indiana Harbor filed a response on April 27, 2016, and Amex Nooter filed a reply on May 6, 2016.

On June 21, 2016, the Court ordered Indiana Harbor to submit a Supplemental Jurisdictional Statement, which Indiana Harbor filed on June 28, 2016. On July 5, 2016, the Court ordered Indiana Harbor to submit a Second Supplemental Jurisdictional statement, which Indiana Harbor filed on July 12, 2016.

## ADDITIONAL FACTUAL BACKGROUND

The following facts are taken from exhibits attached to the parties' briefs.[3]

On December 10, 2013, nonparty ArcelorMittal USA made a written demand that Amex Nooter indemnify ArcelorMittal USA against personal injury claims by Amex Nooter employees

---

[2] Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A).

[3] Although not considered for purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), matters outside the pleadings may be considered on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7). *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001).

injured in the April 3, 2013 explosion and fire. The demand purports to be based on the AMUSA-102 Master Agreement between ArcelorMittal USA and Amex Nooter "relevant to the work that Mr. Griffith and Mr. Swimline were performing on April 3, 2013." (Def. Mot., Ex. E, p. 2). The letter represents that ArcelorMittal USA sustained substantial damage to its property as a result of the incident. The letter advises that a claim for those damages would be made under separate cover.

On January 9, 2014, nonparty ArcelorMittal USA made a written demand that Amex Nooter pay for property damage caused by the fire and additional fuel costs incurred after the fire. The letter represents that Amex Nooter was under a contract with ArcelorMittal USA to repipe the gas bleeder pilot system cabinets in Blast Furnace No. 3 and Blast Furnace No. 4 at the Indiana Harbor facility. This letter, too, references the AMUSA-102 Master Agreement as the basis for liability.

## MOTION TO SUPPLEMENT

In the Motion to Supplement, Amex Nooter asks the Court for leave to supplement the record with the September 17, 2014 Affidavit of Marc R. Jeske, General Counsel of ArcelorMittal USA, which was executed in the Swimline litigation. However, Amex Nooter offers no explanation in the Motion to Supplement as to why the Affidavit is being offered, how the Affidavit relates to the motion, or why the Affidavit, which already existed and was known to Amex Nooter, was not originally offered with the Motion to Dismiss or the reply brief in support of the Motion to Dismiss. (Arguments and explanations raised for the first time in the reply brief in support of the Motion to Supplement are untimely.) In addition, evidence outside the Complaint is not considered for purposes of the motion brought under Rule 12(b)(6), and there is sufficient other evidence before the Court for a ruling on the Rule 12(b)(7) motion. Accordingly, the Court denies the Motion to Supplement.

**ANALYSIS**

In the Motion to Dismiss, Defendant Amex Nooter asks the Court to dismiss the breach of contract counts—Counts II and III—reasoning that those claims are based on the AMUSA-102 Master Agreement, a contract to which Plaintiff Indiana Harbor is not a party. Amex Nooter seeks dismissal under Rules 12(b)(6) and 17(a) for failure to name the real party in interest, which Amex Nooter asserts is ArcelorMittal USA, and under Rules 12(b)(7) and 19(a) for failure to join a required, necessary party, which Amex Nooter argues is ArcelorMittal USA. The Court considers each ground for dismissal in turn.

**A. Rule 12(b)(6) Failure to State a Claim and Rule 17(a)**

In Count II of the Amended Complaint, titled "Defense," Indiana Harbor alleges that Amex Nooter agreed to defend Indiana Harbor against any and all claims arising out of the work it performed pursuant to the Purchase Orders and that Amex Nooter breached the contract by refusing or failing to defend Indiana Harbor in the separate lawsuit brought by Robert Swimline. Amex Nooter seeks dismissal of Count II pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(a), arguing that Indiana Harbor is not the real party in interest to the contract.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a 12(b)(6) motion to dismiss, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief"

such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. For purposes of ruling on the motion brought under Rule 12(b)(6), the Court does not consider those matters offered by the parties in support of their brief that are outside the Complaint. *Perkinson v. Ill. State Police*, No. 15-CV-526, 2016 WL 1321197, at *2 (S.D. Ill. Apr. 5, 2016) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).

Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Rule 17 further provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(c). Rule 17(a) "is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right.'" *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003)). The only concern under Rule 17 is whether the action can be maintained in the plaintiff's name. *Id.* (citing *Betar v. De Havilland Aircraft of Can., Ltd.*, 603 F.2d 30, 32 (7th Cir. 1979)). The purpose of the "rule is to protect the defendant against a subsequent action by the party actually entitled to recover." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010).

Because the contract claim in this diversity case is governed by Indiana law, so is the question of whether Indiana Harbor can maintain this lawsuit in its name. *Rawoof*, 521 F.3d at 756. "As a general rule, the identity of the parties to a contract is ascertained from an examination of the written instrument, and in the absence of ambiguity, the determination of who is liable is resolved by legal construction of its terms." *Sunman-Dearborn Cmty. Sch. Corp. v. Kral-Zepf-Freitag & Assocs.*, 338 N.E.2d 707, 708 (Ind. Ct. App. 1975).

Amex Nooter argues that Indiana Harbor is not a party to the AMUSA-102 Master Agreement, which Amex Nooter asserts is the contract that requires Amex Nooter to provide a "defense." Amex Nooter further argues that the party to the AMUSA-102 Master Agreement is ArcelorMittal USA (which is not a party to this litigation) and not Indiana Harbor. Thus, Amex Nooter reasons that Count II fails to sufficiently state facts that Indiana Harbor is the real party in interest to the AMUSA-102 Master Agreement as opposed to ArcelorMittal USA.

For purposes of determining whether Indiana Harbor has stated a claim of defense in Count II (and for breach of contract of contract in Count III for that matter), Amex Nooter's identification of the AMUSA-102 Master Agreement between ArcelorMittal USA and Amex Nooter as the contract at issue in this litigation is misplaced. Both Counts II and III are based not on the AMUSA-102 Master Agreement but rather on the Contractor Work Contracts between Indiana Harbor and Amex Nooter.

Pursuant to the terms of the AMUSA-102 Master Agreement, a separate Contractor Work Contract is formed when an Owner, such as Indiana Harbor, issues a Purchase Order to Amex Nooter and Amex Nooter accepts the contract by beginning performance of the Purchase Order. In this case, Contractor Work Contracts were formed when Indiana Harbor issued two Purchase Orders

to Amex Nooter and Amex Nooter began performance on April 3, 2013. Paragraph 3 of the AMUSA-102 Master Agreement provides that, once a Purchase Order is accepted (Amex Nooter accepted the Purchase Orders when it began work on April 3, 2013), the terms of the Contractor Work Contract consist of (1) the Safety Handbook, (2) the AMUSA-102 General Terms and Conditions (which this Court finds is *not* the entire AMUSA-102 Master Agreement), and (3) the Purchase Orders. *See* (Am. Compl., Ex. A, AMUSA-102 Master Agreement ¶ 3; AMUSA-102 General Terms and Conditions, Section 2(a)). The Contractor Work Contract is a binding and enforceable contract. (Am. Compl., Ex. A, AMUSA-102 Master Agreement ¶ 3).

Under the Contractor Work Contracts, Amex Nooter (the Contractor) owed certain obligations to Indiana Harbor (the Owner):

1. Amex Nooter was prohibited from taking any action inconsistent with or contrary to the Owner's Code of Business Conduct. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 4(e)).

2. Amex Nooter was required to comply with safety, health, and environmental rules specified by law, the Safety Handbook, or other rules especially applicable at the Owner's facility. (Am. Compl., Ex. A, AMUSA-102 General Terms and Conditions, Section 3(a)).

3. Amex Nooter was prohibited from disregarding or violating the Safety Handbook or other applicable safety rules as such violations were a material breach of the Contractor Work Contract. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 3(b)).

4. Amex Nooter was obligated to control access to and be responsible for all persons and work at Owner's facility where Amex Nooter was performing work. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 3(c)).

5. Amex Nooter was obligated to indemnify, defend, and save harmless Owner's Indemnitees, including the Owner, from any and all claims made by any persons by reason of any act or omission on the part of Amex Nooter or any of its employees. (Am. Compl., Ex. A, AMUSA-102 General Terms and Conditions, Section 22(a)).

6.       Amex Nooter is liable to Owner for the costs (including without limitation reasonable attorney fees) of enforcing Amex Nooter's obligations to indemnify, defend, and save harmless Owner. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 22(b)).

Under the Contractor Work Contracts, Indiana Harbor, as Owner, has certain enforceable rights regarding the work Amex Nooter, as Contractor, was performing on April 3, 2013:

1.       The right of final approval, modification, or disapproval over the scope and impact of the work Amex Nooter was performing on April 3, 2013. Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 4(a)).

2.       The right to terminate Amex Nooter's Contractor Work Contract if Amex Nooter breaches any of its provisions. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 4(h)).

3.       The right to bring suit to enforce against Amex Nooter the Contractor Work Contract for Amex Nooter's failure to indemnify, defend and save harmless Indiana Harbor from damages. (Am. Compl, Ex. A, AMUSA-102 General Terms and Conditions, Section 22(b)).

Notably, Amex Nooter's motion discusses only the AMUSA-102 Master Agreement and does not acknowledge the Contractor Work Contracts or discuss the role of the "Owner" under the Contractor Work Contracts and the Owner's rights.

In addition, ArcelorMittal USA, as the "Owner Signatory" to the AMUSA-102 Master Agreement, is not a party to the Contractor Work Contracts at issue in this case. ArcelorMittal USA is identified in the AMUSA-102 Master Agreement not as an "Owner" but rather as the "Owner Signatory." (Exh. A, AMUSA-102 Master Agreement). ArcelorMittal USA becomes an "Owner" under a Contractor Work Contract only when ArcelorMittal USA itself issues a purchase order. In this case, however, it was not ArcelorMittal USA that issued the relevant Purchase Orders to Amex Nooter but rather Indiana Harbor. Under the Contractor Work Contracts between Indiana Harbor and Amex Nooter, Amex Nooter could not sue ArcelorMittal USA in the event of a breach of the

Contractor Work Contract: "Owner Signatory shall not be liable or responsible to the Contractor for Owner's failure to pay for Work or for any other Owner default or breach of this Contractor Work Contract." (Am. Compl, Ex. A, AMUSA-102 Master Agreement, ¶ 1(c)).

Therefore, there is no ambiguity that the parties to the contracts at issue in this case—the Contractor Work Contracts—are Indiana Harbor and Amex Nooter. Therefore, Indiana Harbor, and not ArcelorMittal USA, is the real party in interest.

Finally, in support of dismissal, Amex Nooter argues that Count II fails to provide sufficient facts to show when Indiana Harbor made a demand for defense upon Amex Nooter and how Indiana Harbor is entitled to a defense based on the four corners of the pleading. A review of the Amended Complaint shows that throughout, Indiana Harbor refers to itself as "ArcelorMittal Indiana Harbor LLC" and refers to ArcelorMittal USA as "ArcelorMittal USA LLC." Yet, in paragraph 56 of the Amended Complaint, regarding the tender of a defense to Amex Nooter in the Swimline matter, the party that tendered the defense is referred to only as "ArcelorMittal": "*ArcelorMittal* tendered its defense of the Swimline lawsuit to Amex Nooter on December 10, 2013 pursuant to Sections 22 and 23 of the Terms and Conditions. *ArcelorMittal* again tendered its defense of the Swimline lawsuit to Amex Nooter on August 28, 2014." (Am. Compl. ¶ 56). Nowhere else in the Amended Complaint is an entity identified as "ArcelorMittal." It is plausible that in Paragraph 56 "ArcelorMittal" is the same entity as "ArcelorMittal Indiana Harbor LLC." The Court finds that, on the face of the Amended Complaint, Indiana Harbor has alleged sufficient facts to show that Indiana Harbor made a demand upon Amex Nooter. To the extent that Amex Nooter references the content of any demand letters themselves in support of this part of its Motion to Dismiss, those demand letters are not part of the pleadings and, thus, are not properly considered on this Rule 12(b)(6) motion. The Court

declines to convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). Nevertheless, this issue can be fleshed out through discovery.

Based on the foregoing, the Court denies the Motion to Dismiss brought under Rule 12(b)(6) and Rule 17(a).

### B. Rule 12(b)(7) and Rule 19–Failure to Join an Indispensable Party

Amex Nooter argues that, because ArcelorMittal USA and ArcelorMittal S.A. are necessary parties to the breach of contract claim in Count III, Count III should be dismissed if ArcelorMittal USA is not joined in this action. Amex Nooter reasons that, although Indiana Harbor claims it "operates" the facility where the April 3, 2013 incident occurred, the two demand letters sent to Amex Nooter for defense of the lawsuit brought by Swimline and for damages for breach of contract were sent not by Indiana Harbor but rather by ArcelorMittal USA. Thus, Amex Nooter contends that ArcelorMittal USA and ArcelorMittal S.A. are necessary parties because they, too, have an interest in the litigation that would leave Amex Nooter subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations if they are not joined.[4]

Federal Rule of Civil Procedure 12(b)(7) provides that a party may assert by motion the defense of failure to join a party under Federal Rule of Civil Procedure 19. Rule 19(a) provides, in relevant part:

> **(1)** ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person *claims an interest relating to the subject of the action* and is so situated that disposing of the action in the person's absence may:

---

[4] Amex Nooter suggests that there may be other necessary parties. However, because Amex Nooter does not identify any such parties, Amex Nooter cannot meet its burden under Rule 19. The Court denies the motion as to any such unnamed parties.

> **(i)** as a practical matter impair or impede the person's ability to protect the interest; *or*
> **(ii)** *leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.*
>
> **(2) *Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a) (emphasis added); *see also Crane v. N. Salem State Bank*, No. 1:10-CV-561, 2011 WL 837187, at *3 (S.D. Ind. Mar. 8, 2011) (quoting *Thomas,* 189 F.3d at 667; Fed. R. Civ. P. 19(a)). "The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 634 (7th Cir. 2009).

When evaluating a Rule 12(b)(7) motion, the Court accepts all well-pleaded allegations in the complaint as true and may consider extrinsic evidence. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001). The movant bears the burden of demonstrating that the absent party is necessary and indispensable. *United States v. Sullivan*, No. 10 CR 821, 2016 WL 1626622, at *4 (N.D. Ill. Apr. 21, 2016) (quoting *Ochs v. Hindman*, 984 F. Supp. 903, 906 (N.D. Ill. 2013)). The Seventh Circuit Court of Appeals has cautioned that dismissal for failure to join a party "is not the preferred outcome under the Rules." *Askew*, 568 F.3d at 634.

Analysis of a Rule 12(b)(7) motion proceeds in two steps. First, the Court must determine whether a party is one that should be joined, if feasible, under Rule 19(a). *Askew*, 568 F.3d at 635; *Davis Cos.*, 268 F.3d at 481 (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). Second, if the Court determines that the party should be joined but cannot be for jurisdictional reasons, then the Court must determine whether the party is indispensable—that is—whether the

litigation can proceed in that party's absence under Rule 19(b). *Askew*, 568 F.3d at 635; *Davis*, 268 F.3d at 481.

Thus, the first Court considers whether ArcelorMittal USA and ArcelorMittal S.A. should be joined. ArcelorMittal USA sent demand letters to Amex Nooter in December 2013 and January 2014 based on the AMUSA-102 Master Agreement, claiming an interest in the same subject of this action brought by Indiana Harbor under the Contractor Work Contracts. In the demand letters, ArcelorMittal USA did not reference the Contractor Work Contracts. In the December 10, 2013 letter, ArcelorMittal USA tendered its defense in the state court Swimline action to Amex Nooter. (Def. Br., Ex. E) (Dec. 10, 2013 demand letter). The Court takes judicial notice that, in the state court action brought by Swimline, which was originally brought in this Court and then remanded after a nondiverse party was joined, ArcelorMittal USA and Indiana Harbor are both named defendants. In the January 9, 2014 demand letter, ArcelorMittal USA asserted a contractual interest in the alleged property damage at the Indiana Harbor West Facility pursuant to "its contract," the AMUSA-102 Master Agreement, in which it is the named "Owner Signatory." (Def. Br., Ex. C) (Jan. 9, 2014 demand letter). These demand letters demonstrate that ArcelorMittal USA has asserted an interest in both the defense of the action brought by Swimline and the claim for damages in this case.

Although Indiana Harbor broadly asserts in its response brief that ArcelorMittal USA's demand letters (Indiana Harbor discusses the letters in the singular) have no weight, Indiana Harbor does not offer any explanation as to why ArcelorMittal USA sent the demand letters or why ArcelorMittal USA would not be permitted to bring a claim against Amex Nooter for the April 3, 2013 fire and explosion. As noted in the context of the 12(b)(6) motion, the Amended Complaint

alleges that "ArcelorMittal"—not "Indiana Harbor" or "ArcelorMittal USA"—sent the demand letters. While the Amended Complaint alleges that the facility where the April 3, 2013 incident occurred was Indiana Harbor's facility, ArcelorMittal USA's two demand letters assert that ArcelorMittal USA owned the facility.

Because ArcelorMittal USA has expressed an interest through its demand letters in the subject matter of both the claims for defense and for breach of contract in this litigation and in light of the ambiguity regarding the ownership of the Indiana Harbor West facility, the Court finds that Amex Nooter is subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations if ArcelorMittal USA is not joined in this lawsuit. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). Thus, Amex Nooter has met its burden of demonstrating that absent party ArcelorMittal USA should be joined. In contrast, Amex Nooter has offered no facts supporting the joinder of ArcelorMittal S.A., and the motion is denied as to ArcelorMittal S.A.

The next question is whether ArcelorMittal USA *can* be joined in this action, meaning that ArcelorMittal USA is subject to service of process and ArcelorMittal USA's joinder will not deprive the court of subject matter jurisdiction. *See* Fed. R. Civ. P. 19(a)(1). For purposes of subject matter jurisdiction, all three business entities—Indiana Harbor, Amex Nooter, and ArcelorMittal USA—are limited liability companies. A limited liability company is analogous to a partnership and takes the citizenship of its members. *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003).[5]

First, Defendant Amex Nooter is a citizen of Missouri. In its Federal Rule of Civil Procedure 7.1 disclosure statement, filed with the Court on June 25, 2015, Amex Nooter, LLC states that it is

---

[5] Amex Nooter incorrectly argues citizenship based on the entities' principal places of business, which is part of the test for citizenship of a corporation.

a Missouri limited liability company that is wholly owned by Nooter Construction Company, a Missouri corporation. A corporation is deemed to be a citizen of every state and foreign state in which it has been incorporated and the state or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The term "principal place of business" refers to the corporation's "nerve center," that is, the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Nooter Construction Company's principal place of business is St. Louis, Missouri. Therefore, Amex Nooter, LLC is a citizen of Missouri.

As for Indiana Harbor, Indiana Harbor is a limited liability company, whose sole member is ArcelorMittal USA LLC. ArcelorMittal USA LLC is a limited liability company whose sole member is ArcelorMittal USA Holdings II LLC. ArcelorMittal USA Holdings II LLC is a limited liability company whose sole member is ArcelorMittal Holdings LLC. ArcelorMittal Holdings LLC is a limited liability company whose sole member is ArcelorMittal USA Holdings LLC. ArcelorMittal USA Holdings LLC is a limited liability company whose sole member is Ispat Inland S.A.R.L., which is wholly owned by ArcelorMittal S.A., a Luxembourg corporation with its principal place of business in Luxembourg.

If the members of the limited liability company are themselves limited liability companies, as with Indiana Harbor, the plaintiff must also plead the citizenship of those members as of the date the complaint was filed. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("[A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well."). The chain of membership of the wholly owned limited liability

companies beginning with Indiana Harbor, including ArcelorMittal USA, and ending with a Luxembourg corporation with its principal place of business in Luxembourg has a twist at the second to last entity–Ispat Inland S.A.R.L.

A S.A.R.L. is a "société à responsabilité limitée." Several countries, including Luxembourg, France, and Switzerland, use the S.A.R.L. There is no controlling law in this circuit, much less in any other circuit, regarding whether a S.A.R.L. should be considered a limited liability company or a corporation for purposes of diversity of citizenship. *See Burge v. Sunrise Medical (US) LLC*, No. 13-CV-2215, 2013 WL 6467994 (D. Colo. Dec. 9, 2013) (addressing a Luxembourg S.A.R.L.); *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 357 (6th Cir. 2010) ("[N]o controlling precedent exists regarding how to determine the citizenship of a French S.A.R.L. for diversity-jurisdiction purposes."); *Indus. Fuel Co., Inc. v. Invista S.A.R.L., LLC*, Civil No. 5:06CV40-V, 2008 WL 619189, at *3 (W.D.N.C. Feb. 5, 2008) (questioning whether the defendant Luxembourg S.A.R.L. could be considered a limited liability company because it had shareholders and managers and did not have "members" as that term is used in LLC parlance but nevertheless finding that there was diversity of citizenship whether the S.A.R.L.'s citizenship was considered as a corporation or a limited liability company).

In this case, like in *Invista S.A.R.L.*, the Court need not decide this issue because whether Ispat Inland S.A.R.L's citizenship is analyzed under the test for a limited liability company or a corporation, Ispat Inland S.A.R.L. is a citizen of Luxembourg. As a limited liability company, Ispat Inland S.A.R.L. is a citizen of Luxembourg because its sole member is ArcelorMittal S.A., a Luxembourg corporation with its principal place of business in Luxembourg. As a corporation, Ispat Inland S.A.R.L. is a citizen of Luxembourg because it was formed under the laws of Luxembourg

with its principal place of business in Luxembourg City, Luxembourg. Thus, both Indiana Harbor and ArcelorMittal USA are citizens of Luxembourg for purposes of subject matter jurisdiction.

Because Indiana Harbor and ArcelorMittal USA as plaintiffs are citizens of Luxembourg and Amex Nooter as defendant is a citizen of Missouri, there is complete diversity of citizenship under 28 U.S.C. § 1332(a)(2). Thus, ArcelorMittal USA can be joined, and the Court need not address the indispensable prong of the test under Rule 19(b).

If ArcelorMittal USA in fact does not have an interest in this litigation—such as an interest in securing a defense in the *Swimline* litigation or in recovering damages under a breach of contract theory—then ArcelorMittal USA can clarify its position once it has joined the litigation and secure a stipulation of dismissal with prejudice as to any claim it might have had in this litigation. This would provide Amex Nooter the necessary protection from any future substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *Compare Hemad Enterprises, Inc. v. Endurance Am. Specialty Ins. Co.*, 308 F.R.D. 191, 193-94 (E.D. Wis. 2015) (finding that the a party need not be joined in part because the nonparty submitted an affidavit indicating that its interests were aligned with a party to the litigation).

Accordingly, the Court grants the Motion to Dismiss to the extent it asks that the Court order the joinder of ArcelorMittal USA and, as a result, denies the Motion to Dismiss to the extent it seeks dismissal of Count III under Rule 12(b)(7). The Court also denies the Motion to Dismiss as to the joinder of ArcelorMittal S.A. or any unnamed entity.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion of Amex Nooter, LLC's to Supplement the Record in Further Support of Its Motion to Dismiss and Its Reply in Support (Doc.

54) [DE 68] and **GRANTS in part** and **DENIES in part** the Motion of Amex Nooter, LLC to Dismiss [DE 48].

The Court **ORDERS** that ArcelorMittal USA LLC **JOIN** this action as a party plaintiff on or before **August 10, 2016**. All Counts of the Amended Complaint remain pending.

The Court **ORDERS** Defendant Amex Nooter, LLC to serve a copy of this Opinion and Order on ArcelorMittal USA LLC.

SO ORDERED this 13th day of July, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT