UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC and ARCELORMITTAL USA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>AMEX NOOTER, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 2:15-cv-00195<br>)<br>)<br>)<br>) |

## AMEX NOOTER MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS

Amex Nooter, LLC ("Amex Nooter") submits this Memorandum in support of its motion to sanction ArcelorMittal Indiana Harbor LLC and ArcelorMittal USA LLC ("ArcelorMittal") for failing to identify and produce documents used in support of its claims and defenses that have been in ArcelorMittal's possession for over three and a half years and in July, 2013 were provided to its designated testifying expert as materials and references relied upon in formulating his opinions. (Doc. 125) Fed. R. Civ. Pro. 37 (c)(1) and Rule 37 (b)(2)(A)(i) – (vi).

## FACTS

On February 8, 2017 ArcelorMittal designated Donald J. Hoffmann ("Hoffmann") as its testifying expert and tendered his written report. Hoffmann's report identified documents that he putatively relied upon in forming his opinions.[1] Among the documents are file materials that counsel for ArcelorMittal provided to Hoffmann on July 3, 2013 – three months after the April 3, 2013 fire, but nearly four years before ArcelorMittal made the documents available to Amex Nooter. Within hours of receipt of ArcelorMittal's expert disclosure on February 8, 2017, Amex

---

[1] ArcelorMittal's Rule 26 Expert Disclosure and Hoffmann's February 8, 2017 Rule 26 Expert Report are attached as Exhibit A. "... In performing this analysis we relied upon the following file materials and references: ..." (Hoffmann Report, p. 1.)

1

1592902.1

Nooter requested copies of all materials that Hoffmann contends he relied upon in preparing his report.[2] Several weeks later, on March 14 – ten (10) days before Amex Nooter is to disclose its experts and their opinions – ArcelorMittal produced 1318 pages of documents given to Hoffmann by ArcelorMittal, but had not been previously produced to Amex Nooter.[3] There is no dispute that Amex Nooter was first made aware of these materials on March 14, 2017 as ArcelorMittal itself acknowledges in the transmittal that the 1300 pages were not previously produced.

These newly identified documents and materials, prepared and maintained by ArcelorMittal,[4] go to the central issues in the case:

- An undated "Initial Report" (Arcelor 1958 – 1959)
- A second undated report (Arcelor 2096 – 2098)
- An undated "time line leading up to the fire on the H3 flare stack cabinet" (Arcelor 2182 – 2183)
- Handwritten notes dated April 19, 2013 and captioned "Fact Finding" (Arcelor 2184 – 2186)
- Handwritten notes on the April 4, 2013 ArcelorMittal USA Indiana Harbor Near Miss Incident Report (Arcelor 2187 – 2198)
- Handwritten notes on the April 9, 2013 ArcelorMittal USA Indiana Harbor New Miss Incident Report (Arcelor 2199 – 2202)
- ArcelorMittal Safety Lockout Procedures Form for the IH-4 Excess Gas Bleeder System dated April 26, 2013 (Arcelor 2203 – 2208)
- Larry Vickery, ArcelorMittal Indiana Harbor West Energy Control Procedure Writer April 26, 2013 e-mail transmitting "proof of correction action resolution." (Arcelor 2209)
- ArcelorMittal Safety Lockout Procedures Form for the IH-3 Excess Gas Bleeder System dated April 23, 2013 (Arcelor 2210 – 2215)
- ArcelorMittal Contractor Safety Representative Veronica Chambers' "statement" to OSHA indicating "No Comment" (Arcelor 2221)

If it is not otherwise patently obvious, ArcelorMittal knew and now knows that these documents "may be used in support of its claims or defenses" because ArcelorMittal gave them to its

---

[2] Counsel for Amex Nooter's February 8, 2017 request for Hoffmann's documents is attached as Exhibit B.
[3] Counsel for ArcelorMittal's March 14, 2017 transmittal is attached as Exhibit C.
[4] Each of these documents is attached as a separate exhibit, Exhibits D through M.

2

designated testifying expert for consideration – in July, 2013, if not earlier. Equally obvious is the fact that the manner in which Amex Nooter pursued written discovery and depositions of ArcelorMittal employees and third parties would have been different had these documents been timely produced.

ArcelorMittal's stunning disregard of its obligations under Rule 26(a)(1)(A)(ii), and its duty under Rule 26(e) to seasonably supplement its initial disclosures, responses to interrogatories, and responses to requests for production, have unduly prejudiced Amex Nooter. Fact discovery has been closed for over seven (7) months and Amex Nooter's Rule 26 (a)(2)(B) expert disclosure deadline of Friday, March 24, 2017 is upon us. These are the written discovery pleadings that ArcelorMittal served on Amex Nooter, without disclosing key documents that it had provided to its testifying expert years ago:

- August 19, 2015 – ArcelorMittal's Initial Rule 26(a) Disclosures
- October 9, 2015 – ArcelorMittal's Responses to Amex Nooter's First Requests for Production of Documents
- April 8, 2016 – ArcelorMittal's Response to First Set of Interrogatories of Amex Nooter
- May 6, 2016 – ArcelorMittal's Response to Second Set of Requests for Production of Amex Nooter
- May 17, 2016 – ArcelorMittal's First Supplemental Response to Amex Nooter's First Set of Interrogatories
- May 31, 2016 – ArcelorMittal's First Supplemental Initial Disclosure
- August 16, 2016 – Amex Nooter's Third Set of Requests for Production of Documents to ArcelorMittal
- August 19, 2016 – Close of Discovery
- August 19, 2016 – ArcelorMittal's Second Supplemental Rule 26(a)(1) Disclosures
- September 2, 2016 – ArcelorMittal's Second Supplemental Answers to Interrogatories
- September 2, 2016 – ArcelorMittal's Third Supplemental Rule 26(a)(1) Disclosures

1592902.1

- September 15, 2016 – ArcelorMittal's Responses to Third Set of Requests for Production of Documents

Furthermore, Amex Nooter requested that ArcelorMittal produce these types of documents in written discovery. For example, Amex Nooter asked ArcelorMittal to:

> 26. Identify and produce all documents regarding communications between (a) ArcelorMittal or its representatives and (b) current or former employees of Amex Nooter regarding the April 3, 2013 fire and explosion.[5]

Rather than produce the handwritten notes that appear on the April 4, 2013 ArcelorMittal USA Indiana Harbor Near Miss Incident Report (Arcelor 2187 – 2198)(Ex. H) and the April 9, 2013 ArcelorMittal USA Indiana Harbor New Miss Incident Report (Arcelor 2199 – 2202)(Ex. I), ArcelorMittal objected,[6] and over its objections, identified eight (8) pages of documents which do not include the materials that Hoffman relied upon.[7] ArcelorMittal supplemented its initial Rule 26 disclosures three (3) times, on May 31, 2916, on August 19, 2016, and September 2, 2016, and never made mention of the documents it deemed necessary for its expert to consider and that its expert deemed important enough to rely upon in formulating his written report and opinions.

The Case Management Order limited the number of depositions available to Amex Nooter. Had "Veronica Chambers' Case File Material" and ArcelorMittal's handwritten notes of the initial investigation and meetings been identified and produced to Amex Nooter, the calculus of whom it wished to depose would have been different. And, with the other ArcelorMittal

---

[5] Amex Nooter, LLC's First Request for Production of Documents, Request No. 26 served July 28, 2015.
[6] ArcelorMittal's response to Request No. 26:

> Plaintiff objects to this request to the extent it seeks information violative of the attorney client privilege and work product privilege. Plaintiff also objects because the request is vague and ambiguous as phrased. Subject to and without waiving said objections, see those documents previously produced in the plaintiff's Rule 26 disclosure and emails attached as Arcelor 00659 and 00666. Investigation continues.

ArcelorMittal has never provided a privilege log and has never designated any of the documents relied upon by Hoffmann and produced on March 14, 2017 as "privileged" or "work product."

1592902.1

reports of the immediate investigation and timelines also in hand, the trajectory of the cross examination of ArcelorMittal's employees – Frank Peters, Stephen Horvath, and Robert Enghofer – about the pre-fire events and post-fire investigation most certainly would have been different.

Take also for example, the photo of the schematic of the H3 Bleeder Stack cabinet that appears in Hoffmann's notes.[8] ArcelorMittal has produced a poor, small scale, multi-generational copy of that drawing which, even when zoomed to 200%, its title is undecipherable.[9] During depositions, Amex Nooter asked its Senior Maintenance Planner, Frank Peters, if there were bigger versions. Peters obfuscated, making it seem that it would be very difficult to locate, something that prompted an off the record discussion.[10] The larger version has never been produced to Amex Nooter, but it was made available to Hoffmann on June 21, 2013, almost three years before Peters was deposed.

Amex Nooter requests that this Court grant its Motion for Sanctions and bar Donald J. Hoffmann from testifying on behalf of ArcelorMittal as an expert. Alternatively, Amex Nooter asks the Court to extend Amex Nooter's expert disclosure deadline until after (a) ArcelorMittal identifies the authors of the newly produced documents; (b) Amex Nooter re-deposes ArcelorMittal employees Robert Creese, William Emery and Frank Peters on what is contained in the newly produced documents, and (c) Amex Nooter deposes for the first time ArcelorMittal employees Veronica Chambers, Kristin Miller, Larry Vickery, and the authors of the newly disclosed material. In addition, Amex Nooter alternatively seeks from ArcelorMittal all costs and expenses incurred for conducting these depositions, an adverse jury instruction, and order any other relief that it deems just and reasonable.

---

[8] Arcelor 2241 (Exhibit N)
[9] Arcelor 00688 (Exhibit O)
[10] Peters Tr. pp. 16 – 18 (Exhibit P)

## ARGUMENT

ArcelorMittal has failed to discharge its responsibilities under Rule 26. Rule 26(a)(1)(A)(ii) provides that a party must, without awaiting a discovery request, provide to the other parties with:

> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

And, Rule 26(e) requires:

> (e) Supplementing Disclosures and Responses.
>
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

In response to Amex Nooter's L.R. Ind. 37-1 correspondence, on March 20, 2017 counsel for ArcelorMittal contends that "We do not intend to use any of the information listed below to support our claims."[11] As it relates to ArcelorMittal's failure to supplement discovery disclosures and responses, this is no excuse. More importantly, the statement is false. ArcelorMittal has affirmatively used the information to support its claims by providing it to its designated testifying expert as a basis of his opinions. The Advisory Committee Notes to the 2000 Amendment to Rule 26 (a)(1) state, "As case preparation continues, a party must

---

[11] Counsel for ArcelorMittal's March 20, 2017 email (Ex. Q)

1592902.1

supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use." ArcelorMittal did not and has not done so.

ArcelorMittal's failures to comply with Rule 26 subject it to sanctions under Rule 37 (c). Rule 37 governs sanctions for failure to disclose information. Specifically, Rule 37(c)(1) provides:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>
> > (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> >
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)

Fed R. Civ. P. 37(c).

*McAtee v. Buca Rests., Inc.* 2011 U.S. Dist. LEXIS 138902 (S.D. Ind.) is nearly squarely on point. After McAtee fell while visiting a restaurant, he sued, alleging that the negligent maintenance of the premises caused his injuries. *McAtee* at p. 1-2. The restaurant responded to a request for production seeking all manuals that relate to the restaurant's maintenance policies or procedures by stating that it had none. *McAtee* at p. 2. The restaurant manager testified at deposition that he knew of no such policies or procedures. This testimony, together with the restaurant's discovery responses, led the plaintiff's liability expert to conclude that the restaurant had no policies outlining "store maintenance, mopping, or the use of wet floor signs." *McAtee* at p. 3. However, a report from the restaurant's expert opined that, "Based upon . . . internal

7

documents that have been supplied by [defendant restaurant], specifically 'Preventing Slips, Trips and Falls and . . . the Safety, Sanitation and Security Procedures and Policies,' which includes an employee signature page, I am of the opinion that [restaurant] has specific policies and procedures in place and that all employees are informed of them." That same day, the restaurant – unlike ArcelorMittal – supplemented its discovery responses referenced in the expert report. *McAtee* at p. 3-4.

The *McAtee* plaintiffs argued that the late production of the documents significantly prejudiced their case, specifically arguing the deposition of a fact witness would have transpired differently had the restaurant timely supplemented its discovery responses. *McAtee* at p. 4. In addition, plaintiff contended that its liability expert "went on . . . the record with opinions based on the absence of such documents." *Id.*

The *McAtee* plaintiffs filed a motion for sanctions pursuant to Rule 37(c)(1). In considering the motion, the court first recognized that Rule 37 provides for sanctions in the event that a party fails to provide information as required by Rule 26(a). The court found that the restaurant bore the burden of correcting its disclosures. Specifically, the court found that procedures governing maintenance were material. Therefore, the court held, if the restaurant's disclosures were untimely, "Rule 37(c)(1) justifies the exclusion of these newly produced policies at trial." *McAtee* at p. 8. In fact, the court noted, the Seventh Circuit "has stated that 'the sanction of exclusion [under Rule 37(c)(1)] is automatic and mandatory unless the sanctioned party can show that its violation . . . [of Rule 26] was either justified or harmless.'" *McAtee* at p. 8, citing *David*, 324 F.3d at 857 (quoting *Salgado v. Gen. Motors Corp.*, 150 F. 3d 735, 742 (7th Cir. 1998)).

1592902.1

The court next considered whether the late disclosure was justified or harmless. The restaurant argued that the late disclosure of the documents did not prejudice plaintiff in any way. The court disagreed, finding that the late disclosure constituted unfair surprise and was "worthy of correction, certainly, and censure." *McAtee* at p. 10. Ultimately, the court sanctioned the restaurant by holding it responsible for costs associated with plaintiff revising the report prepared by its expert and the costs associated with the further deposition of the restaurant manager who was previously unaware of the maintenance policies. *McAtee* at p. 11-12.

In 2015, the Northern District of Indiana in *D.O.H. v. Lake Cen. Sch. Corp.* 2015 U.S. Dist. LEXIS 45157 described the factors that courts should use when making the determination of whether the Rule 26(a) violation was justified or harmless:

(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003); *see Tribble v. Evangelides,* 670 F.3d 753, 760 (7th Cir. 2012).

All factors are present here. Amex Nooter is obviously prejudiced and surprised. The prayer for relief requested by Amex Nooter is a good faith effort to cure to this prejudice. ArcelorMittal has offered no excuse for its dilatory and prejudicial conduct and its bad faith can certainly be inferred by its actions. Most charitably described, ArcelorMittal's actions are an effort to "hide the ball."

Unlike *D.O.H. v. Lake Cent. Sch. Corp.,* ArcelorMittal cannot argue that it did not learn of the existence of the documents sought by Amex Nooter as the documents were composed immediately after the occurrence and/or were shown to Hoffmann three months after the

9

1592902.1

occurrence. Unlike the defendant in *D.O.H. v. Lake Cent Sch. Corp.*, ArcelorMittal never supplemented its disclosure pursuant to Rule 26(e). By his own admission, ArcelorMittal's expert has relied upon the heretofore never disclosed documents to support his opinions. ArcelorMittal cannot argue that it does not intend to rely on the documents and therefore was somehow excused from timely producing them as requested and as required by Rule. Similarly, ArcelorMittal's boilerplate objections to the request for the documents do not excuse its non-compliance.

Given the gravity of ArcelorMittal's failures, the late timing of the disclosure and the apparent bad faith of ArcelorMittal as evidenced by its conduct, the appropriate sanction short of dismissal is to bar Hoffmann from testifying as an expert for ArcelorMittal. Amex Nooter's alternative relief is an attempt to cure the prejudice caused by ArcelorMittal's failures.

The truth be told, ArcelorMittal believes that these newly produced documents are relevant and material to its claims and defenses because it produced at least some of these documents to Hoffmann three months after the accident. All are documents that he now relies upon in formulating his opinion. ArcelorMittal has no excuse for intentionally withholding these documents from Amex Nooter until after discovery has closed and only ten days before Amex Nooter's expert disclosure deadline. Amex Nooter has been prejudiced and it seeks judicial intervention.

WHEREFORE, Amex Nooter, LLC respectfully asks that this Court grant its Motion for Sanctions and bar Donald J. Hoffmann from testifying on behalf of ArcelorMittal. Alternatively, Amex Nooter asks that the court extend Amex Nooter's expert disclosure deadline until after (a) ArcelorMittal identifies the authors of the newly produced documents; (b) Amex Nooter re-deposes ArcelorMittal employees Robert Creese, William Emery and Frank Peters on what is

contained in the newly produced documents, and (c) Amex Nooter deposes for the first time ArcelorMittal employees Veronica Chambers, Kristin Miller, Larry Vickery, and the authors of the newly disclosed material. In addition, Amex Nooter also alternatively seeks from ArcelorMittal all costs and expenses incurred for conducting these depositions, an adverse jury instruction, and all other relief this Court may deem just and reasonable.

Dated: March 22, 2017

                    AMEX NOOTER, LLC

By: */s/ Sava Alexander Vojcanin*
     Sava Alexander Vojcanin
     P. Scott Ritchie
     Clausen Miller P.C.
     10 South LaSalle Street
     Chicago, Illinois 60603-1098
     svojcanin@clausen.com
     Tel: (312) 855-1010
     Fax: (312) 606-7777
     Counsel for Defendant Amex Nooter LLC

## Certificate of Service

The undersigned hereby certifies that on the 22nd day of March, 2017, he electronically filed under seal the foregoing Amex Nooter Memorandum in Support of its Motion for Sanctions with the Clerk of the Court using CM/ECF system which sent notification of such filing to the parties who are registered participants with the System and served a copy of the documents filed under seal to all registered participants by email pursuant to N.D. Ind. L.R. 5-3(1)(c) and the CM/ECF User Manual.

*/s/ Sava Alexander Vojcanin*
Sava Alexander Vojcanin