**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC  )<br>and ARCELORMITTAL USA LLC,  )<br>    Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>AMEX NOOTER, LLC,  )<br>    Defendant.  ) | CAUSE NO.: 2:15-CV-195-PRC |

**OPINION AND ORDER**

This matter is before the Court on Amex Nooter, LLC's Motion for Sanctions [DE 125], filed by Defendant Amex Nooter, LLC ("Amex Nooter") on March 22, 2017, and ArcelorMittal's Motion to Strike Amex Nooter's Reply in Support of its Motion for Sanctions or, in the Alternative, Motion for Leave to File a Sur-Reply [DE 133], filed by Plaintiffs ArcelorMittal Indiana Harbor LLC and ArcelorMittal USA LLC (collectively "ArcelorMittal") on April 20, 2017. The motions were fully briefed on May 11, 2017. For the reasons set forth below, the Court denies the Motion for Sanctions.

**MOTION TO STRIKE**

In the Motion to Strike, ArcelorMittal asks the Court to strike new arguments raised by Amex Nooter for the first time in its reply brief in support of its Motion for Sanctions. As the Court has previously recognized in this case, notably on a motion of Amex Nooter to strike new material raised for the first time in a reply brief of ArcelorMittal, "new legal and factual argument, raised for the first time in the reply brief, is not properly before the Court." (ECF 53, p. 2). The Court finds that Amex Nooter provides new and substantive factual support for its Motion for Sanctions for the first time in the reply brief—factual support that should have been raised in the opening brief to attempt to demonstrate prejudice and to allow ArcelorMittal an opportunity to respond. The reason parties are forbidden from raising new arguments in a reply brief is that "the adverse party typically

has no opportunity to respond and the record on that issue therefore is developed insufficiently for consideration." *Tokarz v. Ventaire Corp.*, 2:03-CV-149, 2006 WL 1793602, at *4 (N.D. Ind. 2006) (quoting *Aircraft Gear Corp. v. Marsh*, No. 02 C 50338, 2004 WL 2222262, at *3 (N.D. Ill. 2004)). Accordingly, the Court grants the Motion to Strike and denies the alternative request for leave to file a Sur-Reply.

First, other than with broad, general statements, Amex Nooter did not attempt to explain the importance of any of 41 pages of documents at issue in its opening motion or otherwise explain substantively how it was prejudiced by the documents. Thus, the Court disregards the chart, on page seven of Amex Nooter's reply brief, that purports to show how the contents of the documents at issue differ from deposition testimony in this case. These purported discrepancies should have been identified in the opening motion to give ArcelorMittal an opportunity to respond to Amex Nooter's assertions. For the same reason, the Court disregards the argument regarding the importance of some of the documents (the Near Miss Incident Reports) in relation to the testimony of Stephen Horvath and of Robert Creese. *See* (ECF 132, pp. 5-6).

Similarly, Amex Nooter asserts for the first time in the reply brief that the documents at issue are responsive to Amex Nooter's Request for Production No. 22. In its opening brief, Amex Nooter identified only Request for Production No. 26 as related to these documents; thus, ArcelorMittal's response brief addressed only Request No. 26. The Court and ArcelorMittal cannot be expected to search for discovery requests that might be at issue; it is Amex Nooter's burden to identify in the opening brief those written discovery requests to which it contends the withheld documents were responsive. The failure to do so constitutes a waiver of those arguments, and the Court strikes the references to Request for Production No. 22 in the reply brief.

**MOTION FOR SANCTIONS**

Amex Nooter asks the Court to sanction ArcelorMittal for not producing to Amex Nooter earlier in discovery 41 pages of documents that ArcelorMittal gave to its testifying expert, Dr. Donald J. Hoffman, in July 2013 when Dr. Hoffman was a consulting expert, that Dr. Hoffman considered in authoring his February 8, 2017 expert report, and that were not disclosed to Amex Nooter until Dr. Hoffman's report. As a sanction, Amex Nooter asks the Court to bar Dr. Hoffman from testifying on behalf of ArcelorMittal or, in the alternative, to extend Amex Nooter's expert disclosure deadline until after (a) ArcelorMittal identifies the authors of the newly produced documents; (b) Amex Nooter redeposes ArcelorMittal employees Robert Creese, William Emery, and Frank Peters on the newly produced documents; and (c) Amex Nooter deposes for the first time ArcelorMittal employees Veronica Chambers, Kristin Miller, Larry Vickery, and the authors of the newly disclosed material.

*1.     Background*

On April 3, 2013, a fire occurred at Blast Furnace No. 3, a part of ArcelorMittal's Indiana Harbor Facility. As part of its investigation of the fire, ArcelorMittal retained counsel and a consulting expert—Donald J. Hoffman, Ph.D. ArcelorMittal gave Dr. Hoffman a number of materials in June and July 2013, including the documents that are the subject of the instant motion.

On May 15, 2015, ArcelorMittal filed this lawsuit against Amex Nooter, alleging that the improper actions of Amex Nooter resulted in the April 3, 2013 fire that caused injuries to two Amex Nooter employees and property damage and other losses sustained by ArcelorMittal.

On August 19, 2015, ArcelorMittal served Amex Nooter with its Federal Rule of Civil Procedure 26(a)(1) initial disclosures, which ArcelorMittal then supplemented pursuant to Federal Rule of Civil Procedure 26(e) on May 31, 2016, August 19, 2016, and September 2, 2016.

During discovery, Amex Nooter propounded several sets of written discovery on ArcelorMittal. The fact discovery deadline was August 19, 2016. On August 16, 2016, Amex Nooter served ArcelorMittal with a Third Set of Requests for Production of Documents; ArcelorMittal objected to the requests in their entirety as untimely because they were served three days prior to the close of discovery.

On February 8, 2017, ArcelorMittal disclosed to Amex Nooter its designated testifying expert, Dr. Hoffman, and tendered his written report. Dr. Hoffman's report identified the file materials and documents that he relied on in performing his analysis and rendering his opinions, writing: "In performing this analysis we relied upon the following file materials and references: . . . ." (ECF 126, p. 1). That same day, February 8, 2017, Amex Nooter requested from ArcelorMittal a copy of all materials that Dr. Hoffman contends he relied on in preparing his report. On March 14, 2017, ArcelorMittal identified approximately 1320 pages of materials relied on by Dr. Hoffman; of those pages, ArcelorMittal produced 41 pages that had not previously been produced to Amex Nooter through discovery.

Amex Nooter's motion incorrectly implies that all 1320 pages of documents had not been previously produced to Amex Nooter. *See* (ECF 125, ¶ 3); (ECF 126, p. 2). In ArcelorMittal's March 24, 2017 correspondence providing the requested documents, ArcelorMittal explained that the documents in Dr. Hoffman's files were bates labeled Arcelor 1077-2397 and that six categories of

documents that made up those 1320 pages were not being produced because they had already been produced in this litigation. The 41 pages of documents that were newly produced are:

1. An undated "Initial Report" (Arcelor 1958-1959)
2. A second undated report (Arcelor 2096-2098)
3. An undated "time line leading up to the fire on the H3 flare stack cabinet" (Arcelor 2182-2183)
4. Handwritten notes dated April 19, 2013 and captioned "Fact Finding" (Arcelor 2184-2186)
5. Handwritten notes on the April 4, 2013 and April 9, 2013 Arcelormittal USA Indiana Harbor Near Miss Incident Reports (Arcelor 2187-2198, 2199-2202)
6. ArcelorMittal Safety Lockout Procedures Form for the IH-4 Excess Gas Bleeder System dated April 26, 2013 (Arcelor 2203-2208)
7. Larry Vickery, ArcelorMittal Indiana Harbor West Energy Control Procedure Writer April 26, 2013 e-mail transmitting "proof of correction action resolution" (Arcelor 2209)
8. ArcelorMittal Safety Lockout Procedures Form for the IH-3 Excess Gas Bleeder System dated April 23, 2013 (Arcelor 2210-2215)
10. ArcelorMittal Contractor Safety Representative Veronica Chambers' "statement" to OSHA indicating "No Comment" (Arcelor 2221).

(ECF 126, p. 2) (Exs. D-M).

As noted above, these 41 pages of documents that had not been previously produced in discovery had been provided to Dr. Hoffman on July 3, 2013—three months after the April 3, 2013 incident underlying this lawsuit—when Dr. Hoffman was a consulting expert and almost two years before the lawsuit was filed. After receiving the production of the 41 pages of documents on March 14, 2017, Amex Nooter discussed with ArcelorMittal its concerns regarding the fact that the documents had not been disclosed earlier (as initial disclosures or during discovery). Unable to resolve its concerns, Amex Nooter filed the instant Motion for Sanctions on March 22, 2017, in light of Amex Nooter's quickly approaching expert disclosure deadline of March 24, 2017.[1]

---

[1] In its response brief, ArcelorMittal argues that Amex Nooter's motion should be denied for failure to properly conduct a Northern District of Indiana Local Rule 37-1 conference. Rule 37-1 requires that a "party filing any discovery motion must file a separate certification that the party has

*2. Analysis*

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) provides that a party must, without awaiting a discovery request, provide to the other parties:

> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and *may use to support its claims or defenses*, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). As for supplementation of initial disclosures and of responses to written discovery requests, Rule 26(e) provides:

> (e) Supplementing Disclosures and Responses.
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Federal Rule of Civil Procedure 37(c)(1) provides for sanctions for failing to comply with Rules 26(a) and 26(e):

---

conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." N.D. Ind. L.R. 37-1(a). Amex Nooter filed a Rule 37-1(a) certification with its motion. Having considered the certification and the record of Amex Nooter's communications with ArcelorMittal on the issue in this motion, the Court finds that Amex Nooter attempted, albeit unsuccessfully, to achieve any possible resolution through its communications with ArcelorMittal. Notably, ArcelorMittal does not suggest what other relief Amex Nooter could have achieved with any additional conferences. The Court notes that Amex Nooter requested the documents from ArcelorMittal on February 8, 2017, and ArcelorMittal did not produce them until March 14, 2017, just ten days before Amex Nooter's deadline of March 24, 2017, to disclose its own experts.

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>> (B) may inform the jury of the party's failure; and
>>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Ci. P. 37(c) (emphasis added). The Seventh Circuit Court of Appeals has stated that the sanction of exclusion under Rule 37(c)(1) "'is automatic and mandatory . . . unless non-disclosure was justified or harmless.'" *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); *see also David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). Courts consider several factors when deciding whether noncompliance with Rule 26(a) is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760.

In the instant Motion for Sanctions, Amex Nooter asserts that ArcelorMittal's failure to disclose these 41 pages of documents earlier in the discovery process violates both Rule 26(a)(1) and 26(e). The Court considers each argument in turn.

First, Amex Nooter argues that it served written discovery on ArcelorMittal to which it believes these 41 pages of documents are responsive. However, the only specific discovery request identified by Amex Nooter is Request to Produce No. 26, which asks ArcelorMittal to:

7

> 26. Identify and produce all documents regarding communications between (a) ArcelorMittal or its representatives and (b) current or former employees of Amex Nooter regarding the April 3, 2013 fire and explosion.

Amex Nooter then contends that the handwritten notes on the April 4, 2013 and April 9, 2013 ArcelorMittal USA Indiana Harbor Near Miss Incident Reports are responsive to Request No. 26. On their face, neither document is a communication between ArcelorMittal and Amex Nooter; both are internal ArcelorMittal documents. Amex Nooter does not attempt to explain how the documents are otherwise responsive to Request No. 26. Thus, ArcelorMittal did not fail to disclose any of the 41 pages of documents in relation to written discovery requests.

Next, Amex Nooter contends that ArcelorMittal should have produced the documents as part of its initial disclosures pursuant to Rule 26(a)(1)(A)(ii), arguing that ArcelorMittal knew and now knows that these documents "may be used in support of its claims or defenses" because ArcelorMittal gave the documents to its testifying expert for consideration at least by July 3, 2013. (ECF 126, p. 3).[2] During the parties' informal attempts to resolve this dispute, ArcelorMittal represented, "We do not intend to use any of the information listed below to support our claims." (ECF 126, Ex. Q). Similarly, in its response brief, ArcelorMittal reasserts that it "has not intended to use the documents at issue to support its claims at any time following the filing of its Complaint." (ECF 131, p. 2, 3). ArcelorMittal further states that it is willing to stipulate that it will not use any of these documents to support its claims or defenses in this litigation. *Id*. at p. 4. Amex Nooter

---

[2] In several places in its brief, Amex Nooter contends that the documents are relevant or would have been useful to Amex Nooter. *See, e.g.*, (ECF 126, p. 10); (ECF 132, pp. 3, 9). For example, Amex Nooter argues, "[I]t is not the exclusive province of ArcelorMittal to determine what discoverable documents may be used by the parties. All things being equal and during proper discovery, these documents would have been very useful in demonstrating ArcelorMittal's responsibility for the cause of the fire and resulting damages." (ECF 132, p. 3). This is not the standard under Rule 26(a)(1)(A)(ii). *See* Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.").

argues that this statement is patently false because ArcelorMittal has affirmatively "used" the information to support its claims by providing the information to its testifying expert as a basis for his opinions.

As set out above, Rule 26(a)(1) requires a party to provide "information . . . that the disclosing party has in its possession, custody, or control and *may use to support its claims or defenses*, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). In the year 2000, Rule 26(a)(1) was revised to this current language, and the advisory committee's notes explain that the purpose of the amendment was to establish a nationally uniform practice with regard to initial disclosures and that the "scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position." Fed. R. Civ. P. 26(a) advisory committee's notes to 2000 amendment. The notes further explain that the word "use" in this rule "includes any use at a pretrial conference, to support a motion, or at trial." *Id*. "The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example." *Id*.

ArcelorMittal gave the 41 pages of documents to Dr. Hoffman when he was a *consulting* expert in July 2013, long before litigation commenced and well before Dr. Hoffman was designated as a retained expert. At the time ArcelorMittal made its initial disclosures in August 2015, it did not intend to directly use the 41 pages of documents to support its claims and defenses, and it still does not. At some point, ArcelorMittal decided to designate Dr. Hoffman as a testifying expert and subsequently disclosed him as an expert and served his expert report on February 8, 2017. In his report, Dr. Hoffman identified the "facts or data" he considered, including the 41 pages of

9

documents, as required by Rule 26(a)(2)(B)(ii).[3] ArcelorMittal produced the documents to Amex Nooter, who requested them the same day that the expert report was served.

In support of its position that ArcelorMittal should be sanctioned under Rule 37(c)(1) for failing to disclose the 41 pages of documents earlier in discovery, Amex Nooter cites *McAtee v. Buca Restaurants, Inc.*, No. 1:10-CV-1090, 2011 WL 6016648 (S.D. Ind. Dec. 2, 2011). In *McAtee*, the plaintiff served a request to produce on the defendant, specifically asking for the defendant's maintenance policy. *Id*. at *1. The defendant responded that it had no such policy. *Id*. In addition, a witness for the defendant (the store manager of the restaurant where the plaintiff slipped and fell) testified that he did not know of the existence of any such policy. *Id*. As a result, the plaintiff's retained expert concluded that the defendant had no policies concerning store maintenance, mopping, or the use of wet floor signs. *Id*. Subsequently, the defendant disclosed its own retained liability expert's report, which indicated that the expert had reviewed the defendant restaurant's internal documents titled "Preventing Slips, Trips and Falls" and "Safety, Sanitation, and Security Procedures and Policies." *Id.* Based on those documents, the defendant's expert concluded that defendant had specific policies and procedures in place. *Id*. The same day that it disclosed this expert report, the defendant supplemented its response to the request for production regarding its maintenance policies. *Id*. at *2.

---

[3] Rule 26(a)(2)(B) was revised in 2007 to protect attorney-expert communications and draft reports. *See* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes to 2007 amendment. With the 2007 amendment, Rule 26(a)(2)(B) requires disclosures of "facts or data considered by the witness in forming" opinions, which is a change from the earlier "data or other information" under the 1993 version of the rule. *Id*. The change "is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that 'facts or data' be interpreted broadly to require disclosures of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id*.

Under Rule 37(c)(1), the plaintiff in *McAtee* sought the sanction of exclusion of the defendant's expert for the failure to disclose the written maintenance policies during discovery. The court held that the defendant did not timely supplement its answer to the request for production as required by Rule 26(e)(1). *Id.* at *3. In considering whether the untimely disclosure was harmless, the court found most persuasive the prejudice to the plaintiff because the plaintiff's expert had already issued his opinion without the benefit of the untimely documents. *Id.* at *4. The ruling in *McAtee* is inapposite for two reasons. First, *McAtee* dealt with a failure to disclose a document that was directly responsive to a request for production of documents, which is not an issue in this case. *Id.* at *3. Notably, the court in *McAtee* did *not* find that the defendant violated the initial disclosures requirement of Rule 26(a)(i)(A)(ii) by not previously disclosing a document that its expert relied on; the analysis was limited solely to the failure to produce the document in response or as a supplemental response to a request for production. Second, the plaintiff in *McAtee* had already disclosed its expert report, which was based in part on the absence of the very documents later relied on by the defendant's expert. In this case, Amex Nooter has not yet disclosed any expert reports; thus, its expert will also have the benefit of the 41 pages of documents if Amex Nooter chooses to include them in the materials reviewed by its expert.

In a similar case, *Loggerhead Tools, LLC v. Sears Holding Corp.*, No. 12-CV-9033, 2016 WL 5080034 (N.D. Ill. Sept. 20, 2016), the court considered the failure of the defendant to disclose approximately 1000 pages of information relied on by its expert prior to the disclosure of the expert's report. Like in *McAtee* and unlike in this case, the moving party in *Loggerhead Tools*, the plaintiff, had already produced its expert report. *Id.* at *1. Subsequently, the defendant served its rebuttal expert report along with the 1000 pages of previously undisclosed documents relied on by

11

the expert. *Id*. The documents consisted of financial records reflecting the defendant's expenses in advertising the accused product on Direct Response TV. *Id*. Like ArcelorMittal in this case, the defendant in *Loggerhead Tools* argued that it did not have a duty to disclose the documents prior to its expert's report. *Id*. First, the court in *Loggerhead Tools*, like the court in *McAtee*, held that the documents were directly responsive to requests for production previously propounded by the plaintiff, that the defendant knew that its response to the request for production was incomplete when it received the plaintiff's expert's report, and that the defendant violated Rule 26(e)(1) by failing to supplement its disclosures at that time. *Id*. at *2. Again, a failure to supplement responses to requests for production is not an issue in the instant case.

However, like ArcelorMittal in the instant case, the defendant in *Loggerhead Tools* also argued that it was not required to disclose the documents prior to the expert's report because the defendant was only required to disclose materials that it "'may use to supports its claims or defenses.'" *Id*. (quoting Fed. R. Civ. P. 26(a)). In response to this argument, the court commented, without any legal or factual analysis: "The materials for Sears' calculation of damages may be used to support its claims or defenses on the issue of damages." *Id*. In contrast, ArcelorMittal vehemently denies any intent to use the 41 pages of documents to support its claims or defenses and is willing to stipulate that it will not use the 41 pages of documents. Although the court in *Loggerhead Tools* found that the defendant "may use" the materials for its calculation of damages (apparently within the meaning of Rule 26(a)(1)(A)(ii)), the court, like the court in *McAtee*, did not find that the expert's consideration of the documents constituted a "use" within the meaning of Rule 26(a)(1)(A)(ii).

Ultimately, in finding that the untimely production was not harmless, the court in *Loggerhead Tools* found that the plaintiff was prejudiced because the withheld policies had information critical in determining the reasonable standard of care—a key element in that case. *Id*. The court found that the ability to cure the prejudice was limited because expert discovery had closed and the trial date was approaching. *Id*.

The facts surrounding the 41 pages of documents in this case appear to present an unusual set of circumstances involving a party who provides to its *consulting* expert, two years before initiating litigation, documents that the party has never itself intended to directly use to support its claims but that remain in the possession of that consulting expert and then are listed, in the expert report, as having been considered by the consulting expert in his subsequent capacity as a retained expert. Generally, the documents a party gives to a retained expert for consideration are documents the party may otherwise use directly to support its claims and will have already been disclosed through initial disclosures under Rule 26(a)(1)(A)(ii). Or, if the documents a party gives to its retained expert are not documents the party itself intends to use, if the documents are relevant, it is likely, as in *McAtee* and *Loggerhead Tools*, that the documents are responsive to a request for production from the opposing party and will have already been disclosed through discovery responses.

Parties are unlikely to purposefully "hide" documents or information by only disclosing them through a retained expert's report because the failure to produce the information through initial disclosures (or their supplementation) would likely lead to the exclusion of the documents under Rule 37(c)(1) if the party tried to use the information to support its claims in the litigation; and, as

in *Loggerhead Tools*, the failure to earlier disclose information that the party itself intends to use may result in the exclusion of the expert's report as well.

Whether or not the 41 pages in this unique situation should have been produced before the service of Dr. Hoffman's expert report on February 8, 2017, is not dispositive of the instant motion because there is no harm to Amex Nooter. First, the Court considers whether Amex Nooter has suffered unfair surprise or prejudice and finds that it has not. Although Amex Nooter argues generally that it was prejudiced because it would have pursued written discovery and depositions of ArcelorMittal employees and third parties differently if the documents had been produced earlier, Amex Nooter identifies no information in the 41 pages of documents that would have changed how it conducted fact discovery. Amex Nooter does not explain what questions it would have asked differently during the depositions it already took or why it would depose any additional individuals based on the documents. Amex Nooter argues generally that "the trajectory of the cross examination of ArcelorMittal's employees - Frank Peters, Stephen Horvath, and Robert Enghofer–about the pre-fire events and post-fire investigation would have been different." (ECF 126, p. 5). But Amex Nooter gives no examples of how the documents would have changed the cross examinations. Amex Nooter reasons that, "had 'Veronica Chambers' Case File Material' and ArcelorMittal's handwritten notes of the initial investigation and meeting been identified and produced, the calculus of whom it wished to depose would have been different." (ECF 126, p. 4). Amex Nooter does not explain *how* that calculus would have been different.

The one example Amex Nooter gives is the photo of the schematic of the H3 Bleeder Stack cabinet that appears in Dr. Hoffman's notes. ArcelorMittal had produced to Amex Nooter during discovery what Amex Nooter describes as a poor, small scale, multigenerational copy of the drawing

14

that, even when zoomed to 200%, has an undecipherable title. *See* (ECF 126, Ex. O). During the deposition of Senior Maintenance Planner, Frank Peters, Amex Nooter asked if there is a bigger version, to which Peters did not give a direct answer. No other version of the schematic was made available to Amex Nooter. However the "larger" version was made available to Dr. Hoffman on June 21, 2013, and is listed in his report. *See* (ECF 126, Ex. N). It is not clear from the Court's comparison of the two exhibits how the version in Dr. Hoffman's report, which is a dark photocopy, is any easier to read. More importantly, Amex Nooter does not identify anything on the schematic in Dr. Hoffman's report that it was previously unable to read on the earlier-produced schematic. *See* (ECF 126, p. 5). Thus, Amex Nooter has shown no prejudice.

Moreover, unlike in both *McAtee* and *Loggerhead Tools*, in which the documents were disclosed in an expert's report after the moving party had already produced its expert report, Amex Nooter's expert disclosure deadline has not yet passed. Therefore, Amex Nooter's expert will have the benefit, if any, of the 41 pages of documents in preparing a report.

The second factor is the "offending party's opportunity to cure such prejudice." Because there is no prejudice, there is no need for ArcelorMittal to provide a cure. However, the Court notes that Amex Nooter asks to be given an opportunity to identify the authors of the newly produced documents. Because the author of some of these documents is not identified, the Court **ORDERS** ArcelorMittal to identify for Amex Nooter on or before June 15, 2017, in writing, with reference to each document by bates number, the author of each document in the 41 pages at issue on this motion.

The third factor is the likelihood of trial disruption, and the Court finds that there is none. Although the Court is resetting certain deadlines, the trial setting will not be affected.

Finally, the Court considers "any bad faith motivating the offending party's tardy disclosure." Although Amex Nooter argues that ArcelorMittal breached its duties under Rule 26, Amex Nooter does not contend that ArcelorMittal acted in bad faith. Nor is there evidence of bad faith, especially in light of ArcelorMittal's stipulation that it will not use these documents at trial.

Accordingly, the Court finds that there is no harm to Amex Nooter in the timing of ArcelorMittal's disclosure of the 41 pages of documents. As a result, the Motion for Sanctions is denied.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** ArcelorMittal's Motion to Strike Amex Nooter's Reply in Support of its Motion for Sanctions or, in the Alternative, Motion for Leave to File a Sur-Reply [DE 133] and **DENIES** Amex Nooter, LLC's Motion for Sanctions [DE 125].

The Court **ORDERS** that the following deadlines are extended: the deadline for Amex Nooter's expert disclosures and reports is **July 6, 2017**. The deadline for supplemental expert reports is **August 3, 2017**. Plaintiff's expert depositions are to be completed by **August 17, 2017**, and Defendant's expert depositions are to be completed by **August 31, 2017**. The deadline for dispositive motions and *Daubert* motions is **September 28, 2017**. In light of the January 5, 2018 final pretrial conference, any request to continue these deadlines will be viewed with disfavor.

SO ORDERED this 8th day of June, 2017.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT