**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ARCELORMITTAL INDIANA HARBOR LLC and ARCELORMITTAL USA LLC, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:15-CV-195-PRC |
| AMEX NOOTER, LLC, Defendant. | ) ) ) | |

**OPINION AND ORDER**

This matter is before the Court on Amex Nooter LLC's Motion for Sanctions Based on ArcelorMittal's Intentional Spoliation of Evidence [DE 175], filed by Defendant Amex Nooter, Inc. ("Amex Nooter") on January 3, 2018. Plaintiffs ArcelorMittal Indiana Harbor LLC and ArcelorMittal USA LLC (collectively "ArcelorMittal") filed a response on January 15, 2018, and Amex Nooter filed a reply on January 22, 2018.

On April 3, 2013, a fire occurred at Blast Furnace No. 3, a part of ArcelorMittal's Indiana Harbor facility, while Amex Nooter employees Korrie Griffith and Robert Swimline were rebuilding the excess gas bleeder pilot burner cabinets pursuant to a contract between ArcelorMittal and Amex Nooter. As Griffith and Swimline were working, natural gas was released from the system and ignited. ArcelorMittal seeks from Amex Nooter approximately $3.2 million in property damage and excess fuel costs as a result of the fire based on theories of negligence and breach of contract under Indiana state law. In the instant motion, Amex Nooter seeks the sanction of dismissal of ArcelorMittal's complaint on the basis that, within hours of the fire, ArcelorMittal discarded and then lost important physical evidence central to Amex Nooter's defense against ArcelorMittal's claims.

*1.     Legal Standard—Spoliation*

This case is brought under the Court's diversity jurisdiction. Thus, ArcelorMittal's duty to preserve pre-suit evidence is governed by Indiana state law, not federal law. *See Allstate Ins. Co. v. Sunbeam*, 53 F.3d 804, 806 (7th Cir. 1995) (noting the parties' agreement that Illinois law covered the pre-suit duty to preserve evidence and recognizing that in diversity cases, "state law governs issues that potentially alter the outcome of the case" (citing *Guaranty Tr. Co. of New York v. York*, 326 U.S. 99, 109 (1945))); *see also Schuring v. Cottrell, Inc.*, No. 13 C 7152, 2015 WL 8970631, at *1 (N.D. Ill. Dec. 16, 2015) (holding that "Illinois law governs the question of whether a party had a duty to preserve evidence before the start of litigation" (citing *Allstate Ins. Co.*, 53 F.3d at 806); *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 799 n.2 (N.D. Ill. May 25, 2010)); *Large v. Mobile Tool Int'l, Inc.*, No. 1:02-CV-177, 2008 WL 89897, *7 (N.D. Ind. Jan. 7, 2008) (holding that Indiana state law, not federal law, determined the pre-suit duty to preserve evidence in a case brought based on diversity jurisdiction (citing *Allstate Ins. Co.*, 53 F.3d at 806)); *Lawrence v. Harley-Davidson Motor Co.*, No. 99 C 2609, 1999 WL 637172, at *2 (N.D. Ill. Aug. 12, 1999) (conducting a choice of law analysis to find that, in that diversity action, state law applied because the pre-suit duty to preserve material evidence was a substantive issue given that "the outcome of the [diversity] litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a [s]tate court" (quoting *Guaranty Tr. Co.*, 326 U.S. at 109)); *Thomas v. Bombardier-Rotax Motorenfabrik, GmbH*, 909 F. Supp. 585, 587 n. 4 (N.D. Ill. 1996) (conducting an *Erie* analysis to find that Illinois state law controls the standard for pre-litigation preservation of evidence in a diversity action).

Under Indiana law, spoliation is defined as "'the intentional destruction, mutilation, alteration, or concealment of evidence.'" *Glotzbach v. Froman*, 854 N.E.2d 337, 338 (Ind. 2006) (quoting *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting Black's Law Dictionary 1409 (7th ed. 1999))); *see also J.S. Sweet Co., Inc. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005) (citing *Cahoon*, 734 N.E.2d at 545); *WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 702 (Ind. Ct. App. 2014) (citing *Glotzbach*, 854 N.E.2d at 338). "Under Indiana law, a party may not lose, destroy or suppress material facts or evidence 'prior to the commencement of the lawsuit that the party knew or should have known was imminent.'" *Large*, 2008 WL 89897, at *7 (quoting *Porter v. Irvin's Interstate Brick & Block Co.*, 691 N.E.2d 1363, 1365 (Ind. Ct. App.1998) (finding that the trucking company was on notice of imminent litigation and preservation duties when its vehicle lost a drive shaft on the interstate)).

In 2000, the Indiana Supreme Court held that "'the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it.'" *Cahoon*, 734 N.E.2d at 545 (quoting *Porter*, 691 N.E.2d at 1364). This holding was reaffirmed in *Glotzbach* in 2006: "If spoliation by a party to a lawsuit is proved, rules of evidence permit the jury to infer that the missing evidence was unfavorable to that party." *Glotzbach*, 854 N.E.2d at 338 (citing *Cahoon*, 734 N.E.2d at 545); *see also Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 351 (Ind. 2005) (declining to adopt a new tort of first-party spoliation but noting that "Indiana law [contains] important sanctions that not only provide remedy to persons aggrieved, but also deterrence to spoliation of evidence by litigants and their attorneys"); *Dawson v. Thornton's Inc.*, 19 N.E.3d 337, 340-41 (Ind. Ct. App. 2014) (discussing this standard and finding that the trial

3

court did not err or abuse its discretion in not giving a proposed instruction on spoliation of evidence); *Miller v. Fed. Exp. Corp.*, 6 N.E.3d 1006, 1011 (Ind. Ct. App. 2014) (recognizing that intentional first-party spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible) (citing *Gribben*).

In its response brief, ArcelorMittal asserts that Indiana law "requires a showing of an improper purpose to prove spoliation." (ECF 213, pp. 15, 17) (quoting *WESCO*, 23 N.E.3d at 702). However, the full quotation from *WESCO* provides:

> In *Gribben v. Wal-Mart Stores, Inc.*, our supreme court noted that "[c]ourts uniformly condemn spoliation. '[I]ntentional destruction of potential evidence *in order to disrupt or defeat another person's right of recovery* is highly improper and cannot be justified.'" 824 N.E.2d 349, 354 (Ind. 2005) (quoting *Coleman v. Eddy Potash, Inc.*, 905 P.2d 185, 189 (N. Mex. 1995)) (emphasis added).

*WESCO*, 23 N.E.3d at 702. The quotation taken from *Gribben*, a case in which the Indiana Supreme Court ultimately decided not to recognize an independent tort of first-party spoliation, is not a statement by the court of the standard under Indiana law but rather a quotation from New Mexico case law as part of a survey of how other courts around the country treat spoliation. *See Gribben*, 824 N.E.2d at 354. Notably, the next sentence in *Gribben* quotes from an opinion from the Montana Supreme Court: "'The intentional *or negligent* destruction or spoliation of evidence cannot be condoned and threatens the very integrity of our judicial system." *Gribben*, 824 N.E.2d at 354 (emphasis added) (quoting *Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 17 (1999)).

Likewise, although ArcelorMittal correctly notes that "bad faith" is required before imposing sanctions for spoliation under the law of the Seventh Circuit Court of Appeals, including for the sanction of an adverse inference, *see* (ECF 213, p. 17), that is a requirement for the federal standard for pre-suit spoliation in cases brought under federal question jurisdiction or for spoliation as a

4

violation of Federal Rule of Civil Procedure 37 during the course of federal litigation, as set forth in several cases cited by both parties. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) (Title VII); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (ADEA claim); *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (ADA); *Haraburda v. ArcelorMittal USA, Inc.*, No. 2:11-CV-93, 2011 WL 2600756 (N.D. Ind. June 28, 2011) (addressing a motion for preservation of evidence filed after the lawsuit was filed (citing *Northington v. H & M Int'l*, No. 08-CV-6297, 2011 WL 663055, *6 (N.D. Ill. Jan.12, 2011) (Title VII); *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, *6 (N.D. Ill. May 25, 2010) (§ 1983 race discrimination); *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, *10-11 (N.D. Ill. Aug. 18, 2005) (illegal credit practices under federal law, applying Rule 37); *Danis v. USN Comms., Inc.*, No. 98 C 7482, 2000 WL 1694325, *32 (N.D. Ill. Oct.20, 2000) (conduct during litigation under Rule 37 and Rule 11); *In re Kmart*, 371 B.R. 823, 842 (N.D. Ill. 2007) (applying the federal standard); *Wells v. Berger, Newmark & Fenchel, P.C.*, 07 C 3061, 2008 WL 4365972, *7 (N.D. Ill. Mar.18, 2008) (Title VII))); *see also Keller v. United States*, 58 F.3d 1194, 1197 n. 6 (7th Cir. 1995) (noting, in a case brought under the Federal Tort Claims Act, the "bad faith" standard and citing federal question cases in support, noting that some courts hold that state spoliation law applies in a diversity case, and noting that the law of New Mexico, which provided the rule of decision in that case, did not recognize negligent or intentional spoliation of evidence as a tort (citing *Allstate Ins. Co.*, 53 F.3d at 805 (diversity case applying state law); citing for the "bad faith" standard *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1098 (7th Cir. 1994)

5

(Lanham Act, discussing inferences drawn from missing records); *United States v. Esposito*, 771 F.2d 283, 286 (7th Cir. 1985) (Hobbs Act and Travel Act); *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 258-59 (7th Cir. 1982) (Carmack Amendment); *United States v. $94,000.00 in U.S. Currency*, 2 F.3d 778, 787 (7th Cir. 1993) (civil forfeiture); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (Title VII))).[1]

However, the negligence and breach of contract claims in this case are state law claims brought under the Court's diversity jurisdiction, and the motion for sanctions is based on pre-suit spoliation. Thus, as set forth above, the Indiana state law standard, and not the federal standard, applies. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 53-54 (1991) (discussing, in the context of a court's imposition of sanctions under its inherent power, that a court sitting in diversity must consider the concerns of *Erie* when there is a conflict between the state and federal substantive law); *see also Ward v. Texas Steak Ltd.*, 7:03-CV-596, 2004 WL 1280776, at *2 (W.D. Va. May 27, 2004)

---

[1] In support of its statement that Seventh Circuit law requires a showing of "bad faith," ArcelorMittal cites *Trask-Morton v. Motel 6 Operating, LP*, 534 F.3d 672 (7th Cir. 2008), which applies the federal standard in a negligence case brought under diversity jurisdiction without addressing whether state or federal law applies. In *Trask-Morton*, the plaintiff filed a motion for sanctions on the basis that the motel destroyed internal documents and electronic data relating to Plaintiff's claims. The court denied this part of the motion for sanctions on the basis that the plaintiff had not shown that the motel acted in "bad faith." *Id*. at 681. In support, the court cited two cases that were brought under federal question jurisdiction, which in turn relied on cases brought under federal question jurisdiction. *See id*. (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) (ADEA) (citing *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (Title VII); citing *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 272 (7th Cir. 1993) (ADEA)); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) (Title VII, and the destruction of documents occurred after litigation commenced)). The court in *Trask-Morton* did not address the choice of law issue, and, thus, there was no discussion of whether Indiana state law should apply to pre-litigation spoliation. In denying sanctions, the court also relied on the fact that the motel had no reason to suspect there would be any litigation until almost two years after the incident. *Id.*; *see also In re Pradaxa (Dabigatran Etexilate) Products Liability Litig.*, 3:12-MD-2385, 2013 WL 5377164, at *5-7 (S.D. Ill. Sept. 25, 2013) (discussing the *Trask-Morton* decision and the possible sources of the court's authority to impose sanctions for pre-litigation spoliation). This Court notes that the court in *Haraburda* also cites *Trask-Morton* for the timing of when the duty to preserve evidence arises. *See Haraburda v. ArcelorMittal USA, Inc.*, No. 2:11-CV-93, 2011 WL 2600756 (N.D. Ind. June 28, 2011).

(applying the *Erie* standard to find that state law applies to sanctions for prelitigation spoliation in a diversity case in which the rule of decision is supplied by state law).[2]

2.  *Facts*

On March 12, 2013, ArcelorMittal issued Purchase Order No. N489392 to Amex Nooter to provide supervision, labor, and materials to rebuild the excess gas bleeder pilot burner cabinets at Blast Furnace No. 3 located at ArcelorMittal Indiana Harbor LLC's Indiana Harbor West Facility ("H3 Cabinets"). Under the Purchase Order, on April 3, 2013, Amex Nooter was to rebuild the H3 Cabinets according to drawings submitted by ArcelorMittal Indiana Harbor to Amex Nooter by demolishing existing pipes and valves in the cabinets and installing new pipes and valves. According to Frank Peters, ArcelorMittal's Senior Maintenance Planner responsible for Blast Furnace No. 3, ArcelorMittal had not repaired or replaced the H3 Cabinets' fittings, pipes, valves, gauges, and regulators during the eight-year period of 2005 to 2013. ArcelorMittal made the decision in February 2013 to upgrade and replace the entire cabinets, pipes, valves, and fittings because of their age,

---

[2] The court in *Ward* reasoned:
  Quite understandably, federal courts must have the power to sanction for *litigation* abuse and need not look to state law in fashioning appropriate sanctions. It is altogether a different matter, however, to sanction parties in a diversity suit for conduct occurring before suit was filed, and if that sanction is inconsistent with state law, create thereby the possibility of opposite outcomes for a state created cause of action, depending upon whether the controversy is adjudicated in state of federal court. *See Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 ("the outcome of [diversity] litigation in the federal court should be substantially the same, so far as the legal rules determine the outcome of litigation, as it would be if tried in state court"). Recognizing that it is a court of limited jurisdiction, this court concludes that when spoliation of evidence does not occur in the course of pending federal litigation, a federal court exercising diversity jurisdiction in which the rule of decision is supplied by state law is required to apply those spoliation principles the forum state would apply. *State Farm & Cas. Co. v. Frigidaire,* 146 F.R.D. 160, 162 (N.D. Ill. 1992) ( "[W]e can only conclude that the issue of State Farm's pre-suit duty to preserve material evidence is substantive and, as such, Illinois law governs"); *see Keller v. United States,* 58 F.3d 1194, 1197-98 (7th Cir. 1995) (citing cases).
*Ward v. Texas Steak Ltd.*, 7:03-CV-596, 2004 WL 1289776, at *2 (W.D. Va. May 27, 2004) (distinguishing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004)).

deterioration, improperly working gauges, the poor shape of the valves, and valves that were internally jammed or could not be turned.

At approximately 7:28 p.m. on April 3, 2013, there was a natural gas fire at the H3 Cabinets, causing obvious and extensive property damage (directly at issue in this case) as well as personal injury to Korrie Griffith and Robert Swimline (not directly at issue in this case, but Swimline's personal injury claim is pending in a separate lawsuit in state court).

One hour and thirty-two minutes after the fire, ArcelorMittal commenced its investigation. ArcelorMittal does not have a formal protocol for the investigation of incidents at ArcelorMittal; however, incident reports are prepared. Stephen D. Horvath, an ArcelorMittal employee, spent only about 40 minutes investigating the incident, including taking only 15 photographs from 9:03 p.m. to 9:17 p.m. The photographic decisions were "just random . . . there was no rhyme or reason . . . ." (ECF 140-11, p. 153:8-13). Robert Enghofer, an ArcelorMittal employee, picked up a gas valve off the ground that was located within a foot of the cabinet. Horvath took a photograph of that valve being held up to a loose hanging pipe outside the H3 Cabinet. ArcelorMittal did not make any notes or diagrams at the fire scene and did make any notes reflecting measurements, distances, or locations of the artifacts at the scene. No one from ArcelorMittal took any steps to preserve, mark, or tag the valve or piping depicted in the pictures. Horvath testified at his deposition that he and Enghofer inspected the threads on the valve and determined that the threads appeared undamaged and not stripped.

The same evening, April 3, 2013, before Amex Nooter had an opportunity to view the scene, ArcelorMittal, including Horvath, "directed the area to be cleaned." (ECF 140-4, p. 75:22). The clean-up was done at the direction of ArcelorMittal by a subcontractor of ArcelorMittal. As part of

the clean-up, the valve depicted in the photos as well as piping and other items from the scene were placed in a garbage receptacle, trash pile, or dumpster.

The following day, April 4, 2013, before lunch, Horvath and Enghofer retrieved the valve and piping from the garbage or a "trash pile" approximately 200 feet away from the H3 Cabinet. Although ArcelorMittal realized that the valve was an "important piece of evidence," no steps were taken to label it. (ECF 140-6, p. 237:10-12); (ECF 140-7, p. 38:3-16). Horvath did not make any record of his observations about the valve. The objects retrieved by Horvath from the trash pile were taken to a conference room in the manager's complex, placed on a table, and "[u]sed as the subject of discussion." (ECF 213-1, p. 79:8-11). At some point on April 4, 2013, Amex Nooter was able to inspect the scene of the fire and representatives took photographs. Also, a meeting between several employees or representatives of ArcelorMittal and Amex Nooter was held in the conference room. Horvath is unsure if the Amex Nooter employees saw the piping and valve, but he testified that a valve and piping were in the conference room during the meeting that lasted an hour. *Id.* at p. 79:18-81:21. In contrast, James Stalley, Amex Nooter's Safety Director, during his deposition testimony did not mention a valve and piping being in the conference room during the April 4, 2013 meeting. He testified regarding the fire scene, "There was nothing there when we went there. And ArcelorMittal had cleaned everything up, so we saw nothing." (ECF 213-7, p. 189: 4-8). He responded "No" when asked if saw a valve, piping, fittings, connections, or any debris. *Id.* at pp. 190:5-14, 193:1-3. Erik Olson, an Amex Nooter supervisor, testified that on the morning of April 4, 2013, he saw a valve that had fallen off laying on the ground near the H3 Cabinet. (ECF 213-8, p. 187:9-18). After the meeting, Frank Peters placed the piping from the conference room in his office; he does not remember if he also placed a valve in his office. His office was apparently a non-

9

secure, or at least not a reasonably secure, location. The items were in the exclusive possession and control of ArcelorMittal both before and at that time. A few hours later, still on April 4, 2013, the valve and piping disappeared without notice or explanation. They have not since been produced or found. The present whereabouts of the items are unknown. When Amex Nooter requested to see the items several days after the incident, ArcelorMittal was unable to produce the items.

Amex Nooter's expert witness Clifford Bigelow opined that the missing valve, piping, and other items removed from the scene "could have contained significant information to assist Amex Nooter in forming its own conclusions as to the origin and cause of the fire, and help in the assessment of responsibility for the fire." (ECF 140-17, p. 2). He also opined that the lack of access to the fire scene to conduct its own technical inspection prior to the clean-up and alteration of the fire scene by ArcelorMittal "deprived Amex Nooter of the opportunity to perform proper examination, documentation and artifact collection at the fire scene as needed to develop and support conclusions in its investigation." *Id*. Bigelow further opined that ArcelorMittal's own fire scene investigation was insufficient and inadequate such that Amex Nooter could not rely on it to conduct its own "objective investigation to determine the origin and cause of the fire, contributing factors of the fire and fire spread, and assess responsibility." *Id*.

*3. Analysis*

Based on the totality of the circumstances relating to the foreseeability of a lawsuit, ArcelorMittal, a large, experienced, and sophisticated business operation that involves danger to its employees and others by the nature of its business, had to have known, and the Court finds that it knew, that a resulting lawsuit was already imminent immediately following the fire and before ArcelorMittal directed the clean up of the scene. The totality of the circumstances include the extent

of the property damage (alleged to be measured in the millions of dollars), the personal injury to Robert Swimline and Korrie Griffith, and the temporary nature of a fire scene. It would strain credulity to think otherwise.

The totality of the circumstances relating to the physical evidence rises to the state of mind level of intent. ArcelorMittal had to have known, at the time it was doing it, that it was not reasonably and appropriately securing and preserving critical physical evidence or the fire scene. The Court finds that ArcelorMittal intentionally destroyed, concealed, or lost critical physical evidence (the fire scene as a whole as well as the valve and piping), making it unavailable for litigation. This finding is based, in part, on the fact that critical physical evidence was destroyed, concealed, or lost while in the exclusive possession and control of ArcelorMittal and ArcelorMittal failed to take reasonable steps to secure and preserve it, already knowing that litigation was imminent.

ArcelorMittal's conduct prejudiced Amex Nooter's ability to adequately and sufficiently investigate the cause and origin of the fire. There are multiple factual scenarios for explanation of the cause and origin of the fire that Amex Nooter could have investigated had the critical physical evidence not been destroyed, concealed, or lost. Clifford Bigelow, Amex Nooter's expert witness, opined that possible scenarios include that (1) the valve on the cabinet was loose and leaking and became separated while Korrie Griffith tried to tighten it; (2) a "hold back" was not used, or was improperly used, during tightening or un-tightening the pipe inside the cabinet, which allowed the pipe or valve to separate; or (3) Griffith intentionally unscrewed the pipe or valve. Bigelow further opined that other potential factors could be (1) mechanical damage or corrosion deterioration of the pipe or screw threads; (2) improper depth of screw thread engagement; and (3) improperly cut or

11

formed screw threads on the valve or pipe ends and union that resulted in deficient thread engagement that led to an unexpected separation when the piping was being worked on.

Considering the spectrum of culpability, ArcelorMittal intentionally destroyed, concealed, or lost critical physical evidence, making it unavailable for litigation. *See, e.g.*, *SVT, LLC v. Becchino*, 31 N.E.3d 550, 2015 WL 1455242, at *7 (Ind. Ct. App. Mar. 31, 2015) (unpublished) (recognizing that the level of culpability "can range from negligent conduct to intentional destruction" and finding that there was sufficient evidence that SVT was at least negligent in failing to preserve surveillance footage on the day of the fall to find that the trial court did not abuse its discretion in issuing a spoliation jury instruction). The resulting prejudice to Amex Nooter is that Amex Nooter is prevented from proving many of its claims and defenses.

In the instant motion, Amex Nooter asks the Court to dismiss ArcelorMittal's claims as a sanction for ArcelorMittal's spoliation. The Court recognizes that the sanction of dismissal is an extreme, draconian, and ultimate sanction. *See Maynard*, 332 F.3d at 467, *overruled on other grounds*; *see also Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). It should rarely be imposed. Moreover, it is not clear that dismissal is an available sanction for pre-litigation spoliation under Indiana law. *See Gribben*, 824 N.E.2d at 355; *Thompson v. Owensby*, 704 N.E.2d 134, 140 (Ind. Ct. App. 1998); *Porter*, 691 N.E.2d at 1364-65 ("While this rule will not be carried to the extent of relieving a party of the burden of proving his case, it may be considered as a circumstance in drawing reasonable inferences from the facts established." (quoting *Great Am. Tea Co. v. Van Buren*, 33 N.E.2d 580, 581 (Ind. 1941)). Regardless, dismissal is not the appropriate remedy in this case.

There are less severe sanctions available to the Court in this case to afford full and adequate relief to cure the prejudice suffered by Amex Nooter. As an alternative to dismissal, Amex Nooter proposes a combination of sixteen sanctions to mitigate the prejudice. As set forth above, it is well-established under Indiana law that "intentional first-party spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible." *Gribben*, 824 N.E.2d at 351; *see also Chambers*, 501 U.S. at 53-54 (regarding the application of the principles in *Erie* to apply substantive state law on the issue of sanctions). The imposition of sanctions, as well as the nature of the sanctions, is a matter committed to the court's discretion. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 655 (7th Cir. 1989). Having considered Amex Nooter's alternative proposal, the Court declines to impose all 16 sanctions. The Court hereby grants the following relief to movant Amex Nooter:

1. A preliminary and final jury instruction that the Jury may, but is not required to, conclude that the fire scene before it was cleaned up and the evidence connected directly to the valve, piping, and other items missing from the scene of the incident would have been unfavorable to ArcelorMittal.

2. The Jury will be permitted to hear and consider evidence from all the parties about the fire scene, the valve, the piping, and the other items being not reasonably secured or preserved by ArcelorMittal and how Amex Nooter has been prejudiced by ArcelorMittal's actions and non-actions in that regard.

The Court reserves the right to alter the wording to, and supplement, these preliminary and final jury instructions and to impose other sanctions for spoliation before or during trial, if appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Amex Nooter LLC's Motion for Sanctions Based on ArcelorMittal's Intentional Spoliation of Evidence [DE 175], imposing the sanction of an adverse inference and corresponding jury instructions set forth in this Opinion in Order and declining to impose the sanction of dismissal or the combination of all sixteen lesser sanctions proposed by Amex Nooter.

SO ORDERED this 23rd day of January, 2018.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT